MOTOR VEHICLE MANUFACTURERS ASSOCIATION OF THE UNITED STATES, INC., ET AL. *v*. WILLIAM A. O'NEILL ET AL.
(13555)

PETERS, C. J., SHEA, GLASS, COVELLO and HULL, Js.

Argued May 2—decision released July 4, 1989

*Mark R. Kravitz,* with whom were *Michael K. Brown* and, on the brief, *William H. Crabtree, Jane Lightfoot Watson, Charles H. Lockwood II* and *John T. Whatley,* for the appellants (plaintiffs).

*Garry Desjardins,* assistant attorney general, with whom were *Robert M. Langer,* assistant attorney general, and, on the brief, *Clarine Nardi Riddle,* acting attorney general, and *William M. Rubenstein,* assistant attorney general, for the appellees (defendants).

*John J. Woodcock III,* pro se, the appellee (intervening defendant).

PETERS, C. J. The dispositive issue in this appeal is the constitutionality of statutory procedures for the arbitration of motor vehicle disputes that, for manufacturers but not for consumers, severely limit the scope of judicial review for challenges to adverse arbitration determinations. This case is here pursuant to the remand that we ordered in *Motor Vehicle Manufacturers Assn. of the United States, Inc.* v. *O'Neill,* 203 Conn. 63, 523 A.2d 486 (1987) (*Motor Vehicle Manufacturers Assn. I*), to amplify a factual record that we deemed inadequate for consideration of a reservation raising a number of constitutional challenges to the validity of Public Acts 1984, No. 84-338, codified as General Statutes §§ 42-181 through 42-185, both in its initial form and as amended in 1985 (Lemon Law II).[1]

---

[1] The key provision is General Statutes (Rev. to 1987) § 42-181, which provides: "DEPARTMENT ARBITRATION PROCEDURE. RECORDS. APPEALS. (a)

Id., 80. Upon remand, and further factual stipulations by the parties,[2] the trial court concluded that the plain-

The department of consumer protection, shall provide an independent arbitration procedure for the settlement of disputes between consumers and manufacturers of motor vehicles which do not conform to all applicable warranties under the terms of section 42-179. The commissioner shall establish one or more automobile dispute settlement panels which shall consist of three members appointed by the commissioner of consumer protection, only one of whom may be directly involved in the manufacture, distribution, sale or service of any product. Members shall be persons interested in consumer disputes and shall serve without compensation for terms of two years at the discretion of the commissioner. In lieu of referring an arbitration dispute to a panel established under the provisions of this section, the department of consumer protection may refer an arbitration dispute to the American Arbitration Association in accordance with regulations adopted in accordance with the provisions of chapter 54.

"(b) An owner of any motor vehicle purchased at any time on or after October 1, 1984, which fails to conform to such applicable warranties as defined in said section 42-179, may bring a grievance to an arbitration panel if the manufacturer of the vehicle has not established an informal dispute settlement procedure which the attorney general has certified as complying in all respects with the requirements of said section 42-179. The consumer may initiate a request for arbitration by calling a toll-free telephone number designated by the commissioner or by requesting an arbitration hearing in writing. The consumer shall file, on forms prescribed by the commissioner, any information deemed relevant to the resolution of the dispute and shall return the form accompanied by a filing fee of fifty dollars. Such complaint form shall offer the consumer a choice of presenting any subsequent testimony orally or in writing. The filing fee shall be refunded if the arbitration panel determines that a complaint does not allege a violation of any applicable warranty under the requirements of said section 42-179. Upon acceptance of the complaint, the commissioner shall notify the manufacturer of the filing of a request for arbitration and shall obtain from the manufacturer, in writing on a form prescribed by the commissioner, any information deemed relevant to the resolution of the dispute. The manufacturer shall return the form within fifteen days of receipt, together with a filing fee of two hundred fifty dollars.

"(c) The department of consumer protection shall investigate, gather and organize all information necessary for a fair and timely decision in each dispute. The commissioner may issue subpoenas on behalf of any arbitration panel to compel the attendance of witnesses and the production of documents, papers and records relevant to the dispute. The department shall forward a copy of all written testimony, including all documentary evidence, to an independent technical expert certified by the National Institute of Automotive Service Excellence or having a degree or other credentials from

tiffs had failed to establish any violation of their state or federal constitutional rights, and accordingly ren-

a nationally recognized organization or institution attesting to automotive expertise, who shall review such material and be available to advise and consult with the arbitration panel. An expert shall sit as a nonvoting member of an arbitration panel whenever oral testimony is presented. Such experts may be recommended by the commissioner of motor vehicles at the request of the commissioner of consumer protection. An arbitration panel shall, as expeditiously as possible, but not later than sixty days after the time the consumer files the complaint form together with the filing fee, render a fair decision based on the information gathered and disclose its findings and the reasons therefor to the parties involved. The decision shall provide appropriate remedies, including, but not limtied to one or more of the following:

"(1) Repair of the vehicle;

"(2) Replacement of the vehicle with an identical or comparable new vehicle acceptable to the consumer;

"(3) Refund of the full contract price, plus collateral charges as specified in subsection (d) of said section 42-179;

"(4) Reimbursement for expenses and compensation for incidental damages as specified in subsection (d) of said section 42-179;

"(5) Any other remedies available under the applicable warranties, section 42-179, this section and sections 42-182 to 42-184, inclusive, or the Magnuson-Moss Warranty-Federal Trade Commission Improvement Act, 88 Stat. 2183 (1975), 15 USC 2301 et seq., as in effect on October 1, 1982.

"The decision shall specify a date for performance and completion of all awarded remedies. Notwithstanding any provision of the general statutes or any regulation to the contrary, the department of consumer protection shall not amend, reverse, rescind or revoke any decision or action of an arbitration panel. The department shall contact the consumer, within ten working days after the date for performance, to determine whether performance has occurred. The manufacturer shall act in good faith in abiding by any department decision. In addition, if the decision is accepted by the consumer, either party to the arbitration may make application to the superior court for the judicial district in which one of the parties resides, or, when the court is not in session, any judge thereof for an order confirming, vacating, modifying or correcting any award, in accordance with the provisions of sections 52-417, 52-418, 52-419 and 52-420. If it is determined by the court that the manufacturer has acted without good cause in bringing an appeal of an award, the court, in its discretion, may grant to the consumer his costs and reasonable attorney's fees.

"(d) The department shall maintain such records of each dispute as the commissioner may require, including an index of disputes by brand name and model. The department shall, at intervals of no more than six months, compile and maintain statistics indicating the record of manufacturer com-

dered a judgment denying their request for declaratory or injunctive relief. We find error.

pliance with arbitration decisions and the number of refunds or replacements awarded. A copy of the statistical summary shall be filed with the commissioner of motor vehicles and shall be considered by him in determining the issuance of any manufacturer license as required under section 14-67a. The summary shall be a public record.

"(e) If a manufacturer has not established an informal dispute settlement procedure certified by the attorney general as complying with the requirements of said section 42-179, public notice of the availability of the department's automobile dispute settlement procedure shall be prominently posted in the place of business of each new car dealer licensed by the department of motor vehicles to engage in the sale of such manufacturer's new motor vehicles. Display of such public notice shall be a condition of licensure under sections 14-52 and 14-64. The commissioner of consumer protection shall determine the size, type face, form and wording of the sign required by this section, which shall include the toll-free telephone number and the address to which requests for the department's arbitration services may be sent.

"(f) Any consumer injured by the operation of any procedure which does not conform with procedures established by a manufacturer pursuant to subsection (b) of section 42-182 and the provisions of Title 16 Code of Federal Regulations Part 703, as in effect on October 1, 1982, may appeal any decision rendered as the result of such a procedure by requesting arbitration de novo of the dispute by an arbitration panel. Filing procedures and fees for appeals shall be the same as those required in subsection (b) of this section. The findings of the manufacturer's informal dispute settlement procedure may be admissible in evidence at such arbitration panel hearing and in any civil action subsequently arising out of any warranty obligation or matter related to the dispute. Any consumer so injured may, in addition, request the attorney general to investigate the manufacturer's procedure to determine whether its certification shall be suspended or revoked after proper notice and hearing. The attorney general shall establish procedures for processing such consumer complaints and maintain a record of the disposition of such complaints, which record shall be included in the annual report prepared in accordance with the provisions of subsection (a) of section 42-182.

"(g) The commissioner of consumer protection shall adopt regulations, in accordance with the provisions of chapter 54, to carry out the purposes of this section. Written copies of the regulations and appropriate arbitration hearing procedures shall be provided to any person upon request."

[2] The plaintiffs are: Motor Vehicle Manufacturers Association of the United States, Inc., a not-for-profit trade association of motor vehicle manufacturers; American Motors Corporation; Chrysler Corporation; Ford

The history of Lemon Law II, which is fully described in *Motor Vehicle Manufacturers Assn. I,* supra, 66–73, may be summarized as follows. In 1982, the legislature enacted General Statutes § 42-179 (Lemon Law I) in order to provide consumers of new motor vehicles additional substantive remedies for the enforcement of express warranties made by the manufacturers of such vehicles. The plaintiffs have not contested the constitutionality of Lemon Law I. Two years later, the legislature enacted Lemon Law II; General Statutes §§ 42-181 through 42-184; to provide such consumers an additional forum for the enforcement of express warranties. The new act authorizes consumers, but not manufacturers, to bring disputes about the performance of new motor vehicles to arbitration panels established by the department of consumer protection. General Statutes § 42-181 (a), (b), (c).[3] The act also permits consumers, but not manufacturers, to reject an unfavorable arbitration decision and to institute a de

Motor Company; Volkswagen of America, Inc.; Automobile Importers of America, Inc., a not-for-profit trade association of motor vehicle importers; Alfa Romeo, Inc.; American Honda Motor Company, Inc.; American Isuzu Motors, Inc.; BMW of North America, Inc.; Fiat Auto U.S.A., Inc.; Jaguar Cars, Inc.; Lotus Performance Cars; Mazda Motors of America (Central), Inc.; Mitsubishi Motor Sales of America, Inc.; Nissan Motor Corporation in U.S.A.; Peugeot Motor Sales of America, Inc.; Porsche Cars of North America, Inc.; Renault U.S.A.; Rolls Royce Motors, Inc.; Saab-Scania of America, Inc.; Subaru of America, Inc.; Toyota Motor Sales, U.S.A., Inc.; and Volvo of America Corporation.

The defendants are: Governor William A. O'Neill; Former Attorney General Joseph I. Lieberman; Commissioner of Consumer Protection Mary M. Heslin; the Department of Consumer Protection; Commissioner of Motor Vehicles Benjamin A. Muzio; and the Department of Motor Vehicles. Former State Representative John J. Woodcock III, a legislative sponsor of Lemon Law II, was permitted to intervene as a party defendant.

[3] A manufacturer may preclude a consumer from recourse to the Lemon Law II arbitration panels only if it establishes an informal dispute settlement mechanism that, to the satisfaction of the attorney general, complies with the requirements of 16 C.F.R. § 703 et seq. See General Statutes §§ 42-179 (i) and 42-181 (e). To date no manufacturer has obtained the necessary certification from the attorney general.

novo civil action. See General Statutes §§ 42-179 (i) and 42-181 (c). Neither consumers nor manufacturers may pursue Lemon Law claims before a jury.

The plaintiffs, in their third amended complaint filed after our remand in *Motor Vehicle Manufacturers Assn. I,* attacked the constitutionality of Lemon Law II on three grounds. They claimed that the act: (1) deprived them of their right to a trial by jury, in violation of article first, § 19, of the Connecticut constitution; (2) improperly limited the scope of judicial review, in violation of the separation of powers provisions of articles second and fifth, § 1, of the Connecticut constitution and the right of access to courts provision of article first, § 10, of the Connecticut constitution; and (3) denied them due process and equal protection of the laws, in violation of the fourteenth amendment to the United States constitution and article first, §§ 8, 10 and 20, of the Connecticut constitution, because the act requires them to pay a $250 filing fee to defend against the claims of consumers.

None of these contentions persuaded the trial court. With respect to the claimed right to a jury trial, the court found, upon an analysis of statistical data contained in a stipulation between the parties, that the proceedings conducted pursuant to Lemon Law II were essentially equitable rather than legal, because the remedies sought from the arbitration panels, and awarded by them, went beyond requests and awards for price refunds. Cf. *Motor Vehicle Manufacturers Assn. I,* supra, 79–80. On the basis of this finding, the court concluded that the plaintiffs were not entitled to a jury trial. The court concluded, furthermore, that the scope of judicial review afforded to arbitration awards under Lemon Law II passed constitutional muster because the act entitled the plaintiffs to the same scope of review presently afforded to the determinations of administrative agencies under the Uniform Adminis-

trative Procedure Act. Finally, the court held that the act was not unconstitutional in requiring the manufacturer to pay the $250 filing fee; General Statutes § 42-181 (b); because it included a statutory provision permitting the waiver of any fee upon proof of economic hardship. General Statutes § 42-185. The court accordingly upheld the constitutionality of Lemon Law II.

In their appeal, the plaintiffs renew the same constitutional challenges that they raised at trial. Although we agree with the trial court's resolution of the plaintiffs' claimed right to a jury trial and to relief from filing fees, we disagree with the court's construction of the act's judicial review provisions as satisfying constitutional due process requirements, and hence find Lemon Law II unconstitutional in part.

I

The plaintiffs' first challenge to Lemon Law II asserts that the statutory arbitration procedures contained in § 42-181 (c) unconstitutionally deprive them of their right to a trial by jury, in violation of article first, § 19, of the Connecticut constitution.[4] In *Motor Vehicle Manufacturers Assn. I,* supra, 68–69, we described Lemon Law II as a statute that "provides supplemental remedies of repair, replacement and refund to facilitate the enforcement of express warranties made by [automobile] manufacturers . . . ." In determining whether such a statutory cause of action must preserve the litigants' right of access to a jury, this court has regularly applied a historical test: would this cause of action have been triable to a jury prior to the constitution of 1818? Id., 76, and cases there cited; see also *Skinner* v. *Angliker,* 211 Conn. 370, 375–78, 559 A.2d 701 (1989); *Bishop* v. *Kelly,* 206 Conn.

[4] Article first, § 19, of the Connecticut constitution provides: "The right of trial by jury shall remain inviolate."

608, 618, 539 A.2d 108 (1988); *Swanson* v. *Boschen,* 143 Conn. 159, 164–66, 120 A.2d 546 (1956).

If Lemon Law II is accurately to be characterized, in law and in fact, as essentially a restatement of an enhanced cause of action for breach of express warranties, the plaintiffs would be correct in their contention that they cannot be deprived of their right to a trial by jury. "Whether a warranty claim is viewed as a contract action, a tort action, or a hybrid of the two . . . such a matter has always been triable to a jury." *Motor Vehicle Manufacturers Assn. I,* supra, 77. If, however, the statute creates a new cause of action that is essentially an equitable claim for specific performance or rescission and restitution, then, as the defendants contend, there is no right to a jury trial for the enforcement or defense of Lemon Law II claims.[5] We agree with the trial court that the record demonstrates the essentially equitable nature of Lemon Law II claims and hence we conclude that the plaintiffs have failed to prove their constitutional claim in this regard.

The trial court made the following findings relying on the records of 521 Lemon Law arbitration decisions rendered from October 1, 1984, to September 30, 1987. "Between 1985 and 1987, 75.58% of consumers requested refunds and 4.42% requested partial refunds. . . . However, 99.61% of the consumers requested replacement (51.35%), repair (6.54%), incidental expenses (22.31%), consequential damages (2.30%), finance charges (3.46%) or other remedies (13.65%). . . . Furthermore, between 1985 and 1987, 39.54% of consumers received refunds and .19% received partial refunds. . . . However, 94.63% of consumers received replacement (7.87%), repair

---

[5] The defendants acknowledged, in a supplement to their brief, that although "a consumer is entitled to reject the arbitration decision and [to] institute a *de novo* civil action in court . . . [such] a consumer is not entitled to a jury trial for . . . Lemon Law claims."

(24.95%), incidental expenses (11.52%), finance charges (20.35%) or other remedies (29.94%)."[6]

These factual findings, which are not clearly erroneous, do not support the plaintiffs' allegation that the nature of Lemon Law II claims and remedies is essentially legal rather than equitable. In the remand that we ordered in *Motor Vehicle Manufacturers Assn. I,* supra, we asked for precisely this kind of factual exploration of the scope of Lemon Law arbitrations. We agree with the plaintiffs that, to the extent that refunds are central to such proceedings, recharacterizing such refund claims as claims for rescission and restitution would not resolve the question of whether such claims are essentially legal or equitable, particularly when a legal action for revocation of acceptance, under §§ 2-608 and 2-715 of the Uniform Commercial Code; General Statutes §§ 42a-2-608 and 42a-2-715; covers much the same ground. Id., 79; see also *Aubrey's R. V. Center, Inc.* v. *Tandy Corporation,* 46 Wash. App. 595, 600–601, 731 P.2d 1124 (1987). The trial court found, however, that, to a significant extent, consumers sought and received orders for replacement and repair designed to approximate the kind of specific relief that is characteristically equitable. " '[W]hen legal and equitable issues are combined in a single action, whether the right to a jury trial attaches depends upon the relative importance of the two types of claims. . . .' " *Texaco, Inc.* v. *Golart,* 206 Conn. 454, 458–59, 538 A.2d 1017 (1988); *United States Trust Co.* v. *Bohart,* 197 Conn. 34, 45, 495 A.2d 1034 (1985). Overall, the flexibility and range of Lemon Law remedies, as well as the statutory linkage of claims for repair and replacement with claims for a variety of monetary remedies, reflect a pattern that is more equitable than legal. Indeed, the very enactment of Lemon Law II arises

---

[6] As the trial court noted, totalling the percentages adds up to more than 100 percent because most awards involved more than one remedy.

out of a legislative determination that legal remedies alone did not provide adequate relief for disappointed consumer purchasers of new motor vehicles. Cf. *Conservation Commission* v. *Price,* 193 Conn. 414, 429–30, 479 A.2d 187 (1984). We therefore conclude that the plaintiffs have not established that they were unconstitutionally deprived of their right to a jury trial.[7]

## II

The plaintiffs' second challenge to Lemon Law II focuses on the limited judicial review that the act affords to manufacturers who are disappointed by the outcome of arbitral decisions. Although consumers are entitled, at their discretion, to initiate de novo civil proceedings to prosecute their Lemon Law claims; General Statutes §§ 42-179 (i) and 42-181 (c); manufacturers may only appeal from arbitration decisions "in accordance with the provisions of sections 52-417, 52-418, 52-419 and 52-420." General Statutes § 42-181 (c). The cross-referenced provisions, designed to govern appeals from awards in consensual arbitrations, require courts to defer to arbitral resolution of virtually all issues of law and fact, so long as the arbitral award conforms to the terms of the issues submitted for arbitration. *Diamond Fertiliser & Chemical Corporation* v. *Commodities Trading International Corporation,* 211 Conn. 541, 547, 560 A.2d 419 (1989); *Wilson* v. *Security Ins. Group,* 199 Conn. 618, 626–27, 509 A.2d 467 (1986). Because Lemon Law II's arbitration procedures are *compulsory* for manufacturers,[8] the

---

[7] A recent decision in New York reached a similar conclusion on this issue, albeit on somewhat different grounds. *Motor Vehicle Manufacturers Assn. of the United States* v. *New York,* 1989 N.Y. App. Div. LEXIS 4902 (1989).

[8] We recognize that manufacturers may theoretically avoid Lemon Law arbitrations in their entirety by establishing alternate dispute resolution mechanisms to the satisfaction of the attorney general. See footnote 3, supra. On the present record, however, we are persuaded that these plaintiffs' submission to arbitration cannot be deemed voluntary. Compare *Wilson* v. *Security Ins. Group,* 199 Conn. 618, 626, 509 A.2d 467 (1986). In any

plaintiffs maintain that incorporation of *consensual* arbitration procedures violates the rights to judicial review that the Connecticut constitution guarantees to them. They claim first that the procedures violate the separation of powers provisions in that a legislatively created tribunal may resolve a legal dispute, traditionally an exclusive judicial function, without resort to review. Conn. Const., arts. II and V, § 1. Second, the plaintiffs claim that the provision that disallows them from pursuing judicial review of the arbitration panel's decision violates their guaranteed right of access to courts. Conn. Const., art. I, § 10; see *Ecker* v. *West Hartford,* 205 Conn. 219, 234, 530 A.2d 1056 (1987). We agree with the plaintiffs.

This court has recently discussed the proper standard of judicial review of a compulsory arbitration award. Because of the fundamental difference between voluntary and compulsory arbitration, "a higher level of judicial review of an arbitration award is warranted where the arbitration is statutorily mandated." *American Universal Ins. Co.* v. *DelGreco,* 205 Conn. 178, 188, 530 A.2d 171 (1987); *Wilson* v. *Security Ins. Group,* supra, 630; *Carofano* v. *Bridgeport,* 196 Conn. 623, 637–38, 495 A.2d 1011 (1985); see also *Mount St. Mary's Hospital* v. *Catherwood,* 26 N.Y.2d 493, 500, 260 N.E.2d 508, 311 N.Y.S.2d 863 (1970). In *DelGreco,* we cited, with approval, case law from a number of jurisdictions holding that "compulsory arbitration statutes that effectively close the courts to the litigants by compelling them to resort to arbitrators for a final and binding determination are void as against public policy and are unconstitutional." *American Universal Ins. Co.* v. *DelGreco,* supra, 188. The constitutional grounds relied upon in these other jurisdictions include the very

case, the defendants' own brief characterizes the arbitration process established by General Statutes § 42-181 as "statutorily mandated or compulsory in nature."

grounds pressed by the present plaintiffs: violation of a state's constitutional separation of powers provisions, and violation of a state's constitutional access to courts provision. Id., 189; see also *Spillman* v. *United States Fidelity & Guaranty Co.,* 179 So. 2d 454, 455 (La. App. 1965); *Macaluso* v. *Watson,* 171 So. 2d 755, 758 (La. App. 1965); *Biddeford* v. *Biddeford Teachers Assn.,* 304 A.2d 387, 402–403 (Me. 1973); *Local 170, Transport Workers Union of America* v. *Circuit Judge,* 322 Mich. 332, 347–48, 34 N.W.2d 71 (1948); *Simon* v. *St. Elizabeth Medical Center,* 3 Ohio Op. 3d 164, 167, 355 N.E.2d 903 (1976). In assessing the reach of these constitutional strictures, we concluded that compulsory arbitration passes constitutional muster "so long as fair procedures are provided by the legislature and ultimate judicial review is available. . . . Courts throughout the United States have uniformly upheld compulsory arbitration statutory schemes as against the constitutional challenges previously mentioned where *de novo judicial review* of the arbitrator's award is available to either party." (Emphasis in original.) *American Universal Ins. Co.* v. *DelGreco,* supra, 189.

Under § 42-181 (c), de novo judicial review is expressly afforded to consumers but not to manufacturers. The defendants justify this departure from the standard articulated in *American Universal Ins. Co.* v. *DelGreco* on the ground that the cross-reference in § 42-181 (c) to the judicial review standards of § 52-418, when properly construed, authorizes sufficiently broad judicial review to withstand the plaintiffs' constitutional challenges. The defendants maintain that, in the context of compulsory arbitrations, § 52-418 permits judicial review closely resembling the scope of judicial review afforded to administrative proceedings. Pursuing that analogy, the defendants urge us to hold that § 52-418 authorizes a court, in an appeal from a compulsory arbitration award, to undertake a de novo review of ques-

tions of law and a substantial evidence review of questions of fact. Because the proposed standard would permit judicial review that is broader than that traditionally available for § 52-418 review of voluntary arbitration awards, it would, according to the defendants, meet constitutional requirements while accommodating the Lemon Law's purpose of avoiding costly litigation. The trial court relied on the defendants' statutory construction argument in rejecting the plaintiffs' constitutional claims.

The defendants' proffered construction, although it has constitutional appeal,[9] finds little direct support in the language of §§ 42-181 (c) or 52-418. We might nonetheless reach for a somewhat strained construction in the service of our acknowledged obligation to implement the legislature's purpose in a manner that is both effective and constitutional, if it were reasonably clear that such a construction accorded with the legislature's underlying intent. Compare *McConnell* v. *Beverly Enterprises-Connecticut, Inc.,* 209 Conn. 692, 706, 553 A.2d 596 (1989), and *Moscone* v. *Manson,* 185 Conn. 124, 128, 440 A.2d 848 (1981), with *Bishop* v. *Kelly,* supra, 617, and *French* v. *Amalgamated Local Union 376,* 203 Conn. 624, 636–37, 526 A.2d 861 (1987). The legislative history is, however, to the contrary. During the earlier stages of this litigation, while arguing *Motor Vehicle Manufacturers Assn. I* in this court, the parties suggested the possible applicability, in the judicial review of Lemon Law arbitration decisions, of the substantial evidence rule that governs administrative appeals. The legislature promptly enacted Public Acts 1987, No. 87-522, § 1, which amends General Statutes § 4-166, the definitions section of the Uniform Administrative Procedure Act, to exclude "automobile

[9] See, e.g., *Detroit* v. *Detroit Police Officers Assn.,* 408 Mich. 410, 481–83, 294 N.W.2d 68 (1980); *Mount St. Mary's Hospital* v. *Catherwood,* 26 N.Y.2d 493, 509–11, 260 N.E.2d 508, 311 N.Y.S.2d 863 (1970).

dispute settlement panels established pursuant to section 42-181" from the definition of "agency." In effect, that amendment repudiated the suggestion that the administrative appeal standard of "substantial evidence" was intended to govern the judicial review of factfinding of Lemon Law II arbitrations. We considered the effect of similar legislative action in *Circle Lanes of Fairfield, Inc.* v. *Fay,* 195 Conn. 534, 539–41, 489 A.2d 363 (1985). There too the legislature had clarified its intent with regard to the scope of permissible administrative appeals during the pendency of judicial proceedings. We held that such a clarification bound the courts because of the legislature's plenary authority to define the scope of administrative appeals. Id., 540. Applying that principle here leads us to conclude that the legislature intended to adopt a judicial review procedure for manufacturers contesting Lemon Law arbitration decisions that is substantially more limited than the review that a litigant may obtain after exhaustion of mandated administrative remedies. We agree with the plaintiffs that this limited review is constitutionally insufficient under the standards enunciated in *American Universal Ins. Co.* v. *DelGreco,* supra, 189.

Our conclusion about the unconstitutionality of the judicial review procedures incorporated in § 42-181 (c) finds additional support in the disparate access that the legislation affords to the various litigants who participate in Lemon Law II arbitrations. No question has been raised about the constitutionality of empowering the consumer to make the decision whether to invoke Lemon Law arbitration proceedings in the first instance. The difficulty arises because § 42-181 (c), in addition, permits the consumer, having invoked arbitration, to disregard an unfavorable award and to pursue a de novo civil action, while it limits the manufacturer to the record review contemplated by § 52-418. The parties have cited no authority, and we have dis-

covered none, that the legislature, in fashioning rules for judicial review, may discriminate in such a fashion against the party whose participation in statutory arbitration proceedings is compulsory. We hold that such disparate treatment violates the plaintiffs' constitutional right to a reasonable opportunity to have a remedy, "by due course of law," in our courts. Conn. Const., art. I, § 10; see *Ryszkiewicz* v. *New Britain*, 193 Conn. 589, 597–600, 479 A.2d 793 (1984).

### III

The plaintiffs' final claim is that the provision of § 42-181 (b) requiring a manufacturer to pay a $250 filing fee to defend against a consumer's complaint violates their constitutional guarantees of due process and equal protection of the laws.[10] We conclude that the fee requirement does not violate the plaintiffs' constitutional rights.

The plaintiffs argue that their having to pay an access fee violates their fundamental right to present a defense.[11] If the plaintiffs were correct in their premise that the access fee deprives them of a judicial hearing, the statutory fee might have to pass a strict scrutiny test. *Boddie* v. *Connecticut*, 401 U.S. 371, 380, 91 S. Ct. 780, 28 L. Ed. 2d 113 (1971), upon which the plaintiffs rely, held that such an access fee "may offend

---

[10] Because the plaintiffs have advanced no argument that our state constitution affords them any greater protection than the federal constitution, we assume that the plaintiffs rely on federal constitutional guarantees. *Connecticut Education Assn.* v. *Tirozzi*, 210 Conn. 286, 293 n.8, 554 A.2d 1065 (1989); *State* v. *Chung*, 202 Conn. 39, 45 n.7, 519 A.2d 1175 (1987).

[11] The plaintiffs do not argue, nor do we conclude, that if filing fees for defendants are otherwise constitutional, the $250 filing fee unduly burdens their right to defend themselves. See *United States* v. *Kras*, 409 U.S. 434, 449, 93 S. Ct. 631, 34 L. Ed. 2d 626 (1973); *Boddie* v. *Connecticut*, 401 U.S. 371, 380–81, 91 S. Ct. 780, 28 L. Ed. 2d 113 (1971); *In re South*, 689 F.2d 162, 165 (10th Cir. 1982). Rather, they simply argue that access fees for defendants are per se unconstitutional.

due process [when] it operates to foreclose a particular party's opportunity to be heard." We are, however, unpersuaded of the plaintiffs' premise that the statute imposes such draconian consequences. In conjunction with the $250 filing fee, General Statutes § 42-185[12] provides for a waiver of the filing fee upon proof of economic hardship. Thus, unlike the appellants in *Boddie,* if one of the plaintiffs somehow could not afford the filing fee, the legislature has provided for the vindication of that party's right to be heard.

We are equally unpersuaded of the plaintiffs' alternate argument that the $250 filing fee requirement deprives them of equal protection of the laws because it treats them differently from other civil defendants, who need not pay filing fees to defend themselves from suit. The equal protection clause mandates like treatment for all those similarly situated. *Darak* v. *Darak,* 210 Conn. 462, 473, 556 A.2d 145 (1989); *Barde* v. *Board of Trustees,* 207 Conn. 59, 65, 539 A.2d 1000 (1988). In determining the validity of disparities in personal treatment, courts ordinarily invoke the rational basis test, which is especially applicable to the review of economic and social legislation. See *United States* v. *Kras,* 409 U.S. 434, 446, 93 S. Ct. 631, 34 L. Ed. 2d 626 (1973); *Chrysler Corporation* v. *Texas Motor Vehicle Commission,* 755 F.2d 1192, 1202–1203 (5th Cir. 1985); *Zapata* v. *Burns,* 207 Conn. 496, 506–507, 542 A.2d 700 (1988). We conclude that there exists a

---

[12] General Statutes § 42-185 provides: "Notwithstanding the provisions of any general statute, regulation or grant of authority to the contrary, no filing fee or statement required under the provisions of this chapter shall be waived, refunded, reduced or withheld from use, by the state pursuant to any contract, stipulated settlement, consent order, administrative directive or by any other means except as provided in this chapter or by order of a court of competent jurisdiction made upon proof of economic hardship and a finding that such settlement, consent order, directive or other action is in the public interest."

rational nexus between the legislature's goal of creating a fiscally independent arbitration mechanism for automobile consumers and the requirement that manufacturers pay a filing fee.[13] The plaintiffs have, accordingly, failed to sustain their heavy burden of proving that this statutory provision is unconstitutional beyond a reasonable doubt. *Zapata* v. *Burns,* supra, 508; *Peck* v. *Jacquemin,* 196 Conn. 53, 64–65, 491 A.2d 1043 (1985).

There is error, the judgment is set aside and the case is remanded to the trial court with direction to render judgment for the plaintiffs.

In this opinion the other justices concurred.

---

[13] The plaintiffs have not challenged on appeal the disparity between the fee they must pay, $250, and the fee the consumer must pay, $50.