Joyce A. **HARMON** and Ronald W. **Harmon,** h/w, **Plaintiffs,**

v.

**CONCORD VOLKSWAGEN, INC.,** d/b/a **Concord Motors and its successor Union Park Pontiac and GMC Trucks, Inc.** a/k/a **Union Park Automotive Group** d/b/a **Union Park Chrysler Plymouth, and Chrysler Corporation, Defendants.**

Superior Court of Delaware,
New Castle County.

Submitted:  Feb. 15, 1991.
Decided:  April 8, 1991.
Revised:  June 19, 1991.

Muriel L.D. Testa, of Sidney Balick & Associates, Wilmington, for plaintiffs.

David G. Culley, of Tybout, Redfearn & Pell, Wilmington, for defendant Concord Volkswagen, Inc.

Roger D. Landon, of Heckler & Cattie, Wilmington, and Michael J. Goggins, of Liebert, Short & Hirshland, Philadelphia, Pa., for defendant Chrysler Corp.

## OPINION

TAYLOR, Judge.

Plaintiff Joyce A. Harmon [J. Harmon, or plaintiff] seeks compensatory damages, punitive and treble damages and attorney's fees for losses resulting from the purchase of a 1985 new Plymouth Horizon automobile [car] on September 5, 1985. Although the plaintiff returned the car to the manufacturer's dealer for repair many times, the problems were not corrected. On one occasion plaintiff Ronald Harmon [R. Harmon] was injured in an accident which resulted from the car stalling. The complaint invokes various statutes enacted for the protection of consumers. This motion focuses on the claims based on the Delaware Automobile Lemon Law, 6 *Del.C.* § 5002, *et seq.,* [Lemon Law] and the Magnuson–Moss Warranty Act, 15 *U.S.C.* § 2301, *et seq.* [Magnuson–Moss Act].

## FACTS

Plaintiff alleges that immediately after receiving the car she began having trouble with the car stalling and by November, 1985 she had returned the car 5 times to correct that problem. On January 10, 1986 she asked Chrysler to accept return of the car and to refund the price. She also requested arbitration. In March, 1986 the Arbitration Board ordered corrective repair. In May, 1986 plaintiff reported the condition had not been corrected. A further arbitration in July, 1986 again ordered repairs. In September, 1986 plaintiff's attorney demanded refund and Chrysler refused to refund or replace the car. In

October, 1986 the car was returned for repairs and remained in repair for 38 days. On November 24, 1986 the car was towed for repair and was not returned until December 24, 1986. On that day the car stalled causing brakes to fail which resulted in an accident injuring R. Harmon. Thereafter, the car was towed to a Chrysler dealer in Delaware where it remained until it was repossessed by Chrysler Credit Corporation and was thereafter sold by that company.

## I. LEMON LAW

### A.

The first issue is whether the Delaware Lemon Law applies to this car. Defendants contend that since the car was purchased in Pennsylvania, the Delaware Lemon Law does not apply. The affidavit of plaintiff J. Harmon dated August 16, 1990 states that Concord Motors' [Concord] salesman who handled the sale of the car knew that she was a Delaware resident, that the car was to be titled in her name in Delaware, to be used for her personal and family use and that Concord processed the paperwork for registering the car in Delaware. This is not denied.

The Lemon Law applies to "any passenger motor vehicle, except motorcycles, which is leased or bought in Delaware or registered by the Division of Motor Vehicles in the Department of Safety except the living facilities of motor homes." 6 *Del.C.* § 5001(5). Accepting the affidavit of J. Harmon as true, for purposes of this motion, this car is subject to the Lemon Law since, according to the affidavit of J. Harmon, the sale contemplated registration of the car in Delaware. Therefore, this new car which was registered in Delaware under the circumstances described above is within the protection of the Delaware Lemon Law. 6 *Del.C.* § 5002.

### B.

Next, defendants contend that to permit the Lemon Law to extend to sales of cars

which take place outside Delaware but are intended to be registered in Delaware would violate the Commerce Clause of the United States Constitution.

■ Chrysler contends that to apply the Delaware Lemon Law to the warranty with this car would violate the United States Supreme Court holding that the application of a state statute to commerce wholly outside of the state's borders violates the Commerce Clause of the United States Constitution, *citing, Edgar v. Mite Corp.*, 457 U.S. 624, 642–43, 102 S.Ct. 2629, 2641, 73 L.Ed.2d 269, 283 (1982). This contention is based on Chrysler's view that the only pertinent considerations are where the car was purchased and the state of incorporation of the dealer. That position overlooks the nature of this claim, which centers upon a warranty given by the manufacturer, which does business in most, if not all, states, the manufacturer's efforts to repair the defect, and the fact that the car was sold with knowledge that it was purchased by a Delaware resident to be registered in Delaware and which probably would be serviced and repaired in Delaware.

■ Chrysler's arguments proceed on the assumption that the rights of the parties became fixed as of the sale and that since the sale occurred in Pennsylvania the rights under the manufacturer's warranty must be governed by Pennsylvania law. This is an oversimplification of principles of conflicts of law. Important factors which must be considered in determining the applicable law are the residence or place of incorporation of the parties and the place of performance of the contractual obligations. *Restatement (Second) of Conflicts of Law* § 188 (1971). *Cf.* 2 J. Beale, *A Treatise on the Conflict of Laws* § 355.1 (1935); H. Goodrich, *Handbook of the Conflict of Laws* § 110 at 324–25 (1949).

■ Here, the manufacturer which issued the warranty was a Delaware corporation and the purchaser was a Delaware resident. Moreover, since the purchaser's residence and the place of registration of the car was Delaware, the probable place where the warranty would be implemented by repairs to the car was Delaware. The situs of the subject matter of the contract also was Delaware. *Restatement (Second) of Conflict of Laws* § 188 comment e. The principles of conflicts of law require that the enforcement of Chrysler's warranty for this car should be determined by Delaware law, which is the Delaware Lemon Law.

The state statute application which *Edgar* bars is "application of a state statute to commerce that takes place *wholly* outside of the State's borders". (Emphasis added). The "commerce" to which the Delaware Lemon Law is being applied in this case did not take place wholly outside Delaware. While the sale took place outside Delaware, the manufacturer's warranty which is involved in this case was given by a manufacturer which sells its cars nationwide and repairs contemplated by the warranty take place wherever the car is located when repairs are needed. Therefore, the performance of the warranty obligations takes place where the car is located. Therefore, it cannot be said that the "commerce" involving this case was intended to be wholly outside Delaware. It has been discussed above that the probable situs of the performance of the warranty contract was Delaware. *Restatement* comment e.

Defendants' reliance on *Edgar v. Mite*, 457 U.S. 624, 102 S.Ct. 2629, 73 L.Ed.2d 269 (1982) does not support its position here. *Edgar* involved an Illinois statute which imposed requirements for takeover offers for any corporation where Illinois shareholders owned 10 percent or more of the shares of the target company. The issue was whether the Williams Act, a federal statute which required various information to be filed with the SEC in the event of a contemplated corporate control contests and imposed certain restraints, preempted the Illinois statute. The Supreme Court found the statute unconstitutional for a number of reasons. It did note that application of a state statute to "commerce that takes place wholly outside of the State's borders" is prohibited. However, following the quoted language, it noted "the limits on a State's power to enact substantive legislation are similar to the limits on the

jurisdiction of state courts." The following quotation demonstrates the absence of rigidity in applying the Commerce Clause:

> Not every exercise of state power with some impact on interstate commerce is invalid. A state statute must be upheld if it "regulates even-handedly to effectuate a legitimate local interest, and its effects on interstate commerce are only incidental ... unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits. *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970), citing *Huron Cement Co. v. Detroit*, 362 U.S. 440, 80 S.Ct. 813, 4 L.Ed.2d 852, 78 A.L.R.2d 1294 (1960).

*Edgar*, 457 U.S. at 640, 102 S.Ct. at 2639, 73 L.Ed.2d at 282.

If, as *Edgar* indicates, the State's power in this area is similar to that which determines the jurisdiction of this Court, since it has been determined above that this Court does have jurisdiction over Chrysler for purposes of this case, the application of the Lemon Law to Chrysler in this case is permissible. Chrysler is incorporated in this State, maintains an automobile plant in this State and in this particular matter participated in proceedings held by the Customer Arbitration Board in Delaware. Therefore, its relationship to this State and in this transaction far exceeds any "minimum contacts test".

An alternate test accepted in *Edgar* is whether this application of the Lemon Law "regulates even-handedly to effectuate a legitimate local interest, and its effects on interstate commerce are only incidental...."

The first consideration is whether the subject is a legitimate state interest.

The Delaware Lemon Law provides for safer cars on the highways by eliminating lemon cars from the highway and it protects its residents from unfair or improper conduct of car manufacturers.

The Delaware Lemon Law provides relief for purchasers of new cars in the event the manufacturer which gives an express warranty fails to honor its warranty obligation with respect to defects in the automobile which become evident within one year. It is designed to assure proper repair to cars and replacement of defective car parts. Its objective is to assure that new cars operate safely and properly, at least to the extent warranted by the manufacturer. If the manufacturer fails to take effective corrective action it imposes obligations to make the customer whole by replacing the car or refunding the cost. On the other hand, it does not require or control the warranty. As to cars not purchased within this State, it only applies to those which are registered in this State, namely, cars which are most likely to be used in the State. This means that at the time of the purchase the parties contemplated that the new automobile would be registered in Delaware. The obligations imposed by the Lemon Law apply only where the manufacturer gives the buyer an express warranty. Where the buyer resides in Delaware, it is probable that the buyer will take the car to a dealer within the State for repairs under the warranty.

Many states have enacted "lemon laws" whose objective generally is to provide additional remedies where manufacturers fail to comply with their express warranties. 17 *Am.Jur.2d*, Consumer Product Warranty Acts §§ 16, 67. As of 1989, 44 states and the District of Columbia had enacted lemon laws. 39 *Am.Jur. Trials* 17.[1]

---

1. The New York Lemon Law, N.Y.Gen.Bus. Law § 198–a (McKinney 1988), requires automobile manufacturers to provide a warranty extending for 18,000 miles of operation or during 2 years after delivery. This law was upheld as dealing with a legitimate State interest imposing only minimal burden on interstate commerce and was held not to violate the Commerce Clause of the United States Constitution. *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. Abrams*, S.D.N.Y., 720 F.Supp. 284 (1989).

Lemon Laws of various states have been attacked as violating various constitutional provisions and they have been held to be constitutionally permissible. *Chrysler Corp. v. Texas Motor Vehicle Comm'n*, 755 F.2d 1192 (5th Cir. 1985), 51 ALR.4th 845; *State by Abrams v. Ford Motor Co.*, 74 N.Y.2d 495, 549 N.Y.S.2d 368, 548 N.E.2d 906 (1989); *Ford Motor Co. v. Barrett*, 115 Wash.2d 556, 800 P.2d 367 (1990); *Motor Vehicle Mfrs. Ass'n v. O'Neill*, 212 Conn. 83, 561 A.2d 917 (1989); *Muzzy v. Chevrolet Div., GMC,*

The Delaware Lemon Law is designed to assure that new cars operate safely and properly, at least to the extent warranted by the manufacturer. It provides obligations which apply after repeated trouble with the new car. It does not require the manufacturer to make a warranty. It recognizes that most manufacturers do regularly provide warranties to buyers of new cars. It also recognizes that since it is customary for warranty repairs to be made at the places of business of dealers located in the vicinity where the buyer is located and therefore Delaware residents are likely to have warranty repairs made in Delaware regardless of where they purchased the car. Based on those premises it provides remedies in the event that the manufacturer fails to act reasonably in meeting its warranty. Thus, the Lemon Law is based on a legitimate state interest.

The next consideration is whether this application of the Lemon Law "regulates even-handedly to effectuate the legitimate local interest". The statute applies to "any passenger motor vehicles, except motorcycles, leased or bought in Delaware or registered by the [Delaware] Division of Motor Vehicles ... except the living facilities of motor homes." 6 *Del.C.* § 5001(5). It applies to all leases or sales of automobiles transacted in Delaware and to automobiles registered in Delaware. The same provisions apply to all such vehicles regardless of where the transaction occurred. The remedy is the same regardless of where the purchase takes place. Hence, the Lemon Law regulates even-handedly in effectuating its purpose.

The next requirement under *Edgar* is that the effect upon interstate commerce must be incidental. The Delaware Lemon Law does not require the manufacturer to give warranties. Nor does it control the content of the manufacturer's warranty. It does impose certain obligations upon the manufacturer which fails to comply with its warranty within a specified number of attempts. For a manufacturer which complies reasonably with its warranty, the Lemon Law poses no burden. The failure of a manufacturer to comply reasonably with its warranty obligation does not have more than incidental effect on interstate commerce.

A further consideration is the comparative impact upon the manufacturer from having the Delaware law applied instead of the law of Pennsylvania, where the sale occurred. Pennsylvania has a lemon law which is strikingly similar to Delaware's. 73 *Purdon's Pa.Stat.Ann.*, Ch. 28. One pertinent difference between the Pennsylvania and the Delaware statutes is that only 3 attempts to repair are required under the Pennsylvania law, while 4 attempts are required under Delaware law. *Cf.* 73 *Purdon*, § 1956; 6 *Del.C.* § 5004. Both statutes give the purchaser the option to require a refund. 73 *Purdon*, § 1955; 6 *Del.C.* § 5003. Therefore, each statute is designed to afford similar protection to the purchaser of a new car. While this has not been raised as a consideration in determining the constitutionality of the application of the Delaware Lemon Law in this case, it does indicate absence of unequal treatment.[2]

*Pike v. Bruce Church, Inc.,* 397 U.S. 137, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970) balanced state regulation versus the commerce clause in a realistic context which applies to the present case. It distinguished between a regulation which prevents unfit product or misleading promotion, which would be a permissible state

---

153 Vt. 179, 571 A.2d 609 (1989); *Motor Vehicle Mfrs. Ass'n. v. State,* 75 N.Y.2d 175, 551 N.Y.S.2d 470, 550 N.E.2d 919 (1990).

**2.** Defendants have cited a number of decisions by the United States Supreme Court which need to be addressed.

*World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); and *Shaffer v. Heitner,* 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977) involved the application of long arm jurisdiction. The test applied in *Woodson* was whether "defendant's conduct and connection with the forum State are such that [defendant] should reasonably anticipate being hailed into court there." *Heitner* involved jurisdiction over nonresident directors of a Delaware corporation. *Huron Portland Cement Co. v. Detroit,* 362 U.S. 440, 80 S.Ct. 813, 4 L.Ed.2d 852 (1960), upheld application of a local air pollution regulation to a ship.

regulation, and a regulation which merely would enhance the local reputation, which the court struck down. The Delaware Lemon Law is designed to provide a realistic remedy where a car is an unfit product.

Based on the foregoing considerations, I do not find that the Lemon Law as applied here violates the Commerce Clause of the United States Constitution.

### C.

Defendants' position is that plaintiffs are not entitled to recover under the Lemon Law because they have not returned the car. Plaintiffs' position is that when they requested refund after giving Chrysler the required opportunity to correct the problems Chrysler had an obligation to arrange for accepting return of the car and to refund or replace the car as requested.

■■■ It is true that the specific relief under that statute is dependent upon the return of the car. 6 *Del.C.* § 5003. However, each time plaintiff made her request for refund, Chrysler denied the request and undertook to make further repairs. This happened on at least three occasions. While 6 *Del.C.* § 5007 does permit an informal settlement procedure to be established by a manufacturer which a customer must follow before resorting to the remedies provided in the Lemon Law, the bar is based upon the customer having "first resorted to such procedure". It does not require repeated resort to such procedure which has proved ineffective. In a case such as this, after resorting to such procedure without relief, the manufacturer had a duty to accept the car and either refund the adjusted purchase price or replace the car with a new one. Upon receipt of the request from plaintiffs, Chrysler had a duty to acknowledge that duty and provide plaintiffs with instructions how and when to return the lemon car.

■■■ The Lemon Law is a remedial statute intended to provide additional protection and remedies for the buying public. 6

*Del.C.* §§ 5008, 5009. Therefore, the remedies should be given reasonable breadth in order to effectuate this policy.

Under the Delaware Lemon Law after the manufacturer has attempted to repair the defect four times [3] or has had the car for repair for a cumulative total of more than 30 days, the purchaser is entitled to either a new car or refund of purchase price, at the election of the purchaser. 6 *Del.C.* §§ 5003, 5004. The purchaser is entitled to that remedy upon notifying the manufacturer in writing of the pertinent facts, and the election to have the refund.

■■■ The statute is silent as to the procedure to be followed after the purchaser gives notice of the election to have the refund. Since the manufacturer has no ongoing procedure for receiving a lemon car which qualifies for return in exchange for refund, upon receipt of the notice from the purchaser it becomes the duty of the manufacturer to communicate with the purchaser giving instructions for the return of the car and acknowledging its responsibility to make the refund. Where a manufacturer breaches that duty, it should not be permitted to assert the failure of the purchaser to return the car as a bar to the purchaser's suit for the benefits provided by the Lemon Law. *Charamella v. Barley Mill Road Homes*, Del.Supr., 142 A.2d 515 (1958); *Wells v. Lee Builders, Inc.*, Del. Supr., 99 A.2d 620 (1953).

■■■ Here, if Chrysler had instructed plaintiff on the time and place for the lemon car to be returned, the burden would then have been on the buyer to return it. Instead, Chrysler denied that it had any duty to replace the lemon car or refund the price and thereby breached its obligation under the Lemon Law. Plaintiff is entitled to the relief which the statute provided and to be placed in the same position as though Chrysler had given directions for the return of the car and plaintiff had returned the car.

Defendants have cited two Pennsylvania decisions in support of their position that

---

**3.** Under the Pennsylvania lemon law, the purchaser is entitled to refund after the manufacturer makes 3 unsuccessful attempts to repair the defect. 73 *Purdon's Pa.Stat.Ann.*, § 1955.

plaintiff must be barred because of failure to return the car, *Ford Motor Credit Co. v. Dunsmore,* 374 Pa.Super. 303, 542 A.2d 1033 (1988) and *Berry v. General Motors Corp.,* No. 87–3273, 1989 WL 86224 (E.D.Pa. July 28, 1989) (Waldman, J.). *Dunsmore* was an action to replevy a car by a finance company. The issue was whether the purchaser of a lemon car could refuse to make payments to the finance company which loaned the money which was used to purchase the lemon car. The decision was that the fact that the car was a lemon and permitted the purchaser to relief against the manufacturer did not relieve the purchaser of his liability for payments to the finance company. *Berry* involved a suit under the Pennsylvania lemon law by a purchaser of a lemon car which had been repossessed by the finance company. *Berry* held that under the Pennsylvania lemon law the person suing must qualify as a purchaser when the suit is filed. That requirement differs from the Delaware Lemon Law, which uses the word "consumer", and defines consumer as

> "the purchaser, other than for purposes of resale, of an automobile; a person to whom an automobile is transferred during the duration of an express warranty applicable to the automobile; or any other person entitled by the terms of the warranty to enforce the obligation of the warranty."

6 *Del.C.* § 5001(1).

The Pennsylvania cases are unpersuasive in this case because (1) the difference in the statutes, (2) the absence of offer in those cases to return the car under the Lemon Law, and (3) the simplistic approach in *Berry* which if applied under the facts of this case would disregard the failure of the manufacturer to accept its responsibility to cooperate and provide for the return of the car when the purchaser asserted its right under the lemon law. Furthermore, I find no justification for imposing a technical restraint upon a statute whose purpose is to provide relief for the buying public from defective products.

In view of the conclusion reached above, it is unnecessary to discuss the effect of the fact that Chrysler Credit Corporation, which repossessed the lemon car, is a wholly owned subsidiary of Chrysler Corporation.

**D.**

Defendants also contend that since plaintiffs have not produced a warranty they cannot recover under Count I. They have noted the testimony of Ronald Harmon [R. Harmon] that there was a 5 year warranty on the engine and transmission. Apparently this has not been adequately covered by discovery at this time and is not ready for disposition under the present motion.

**E.**

■ Concord contends that it is not subject to the Lemon Law because that statute does not apply to a dealer. This Court held in *Norman Gershman's Things To Wear, Inc. v. Mercedes–Benz of North America, Inc.,* Del.Super., 558 A.2d 1066 (1989), that the obligations imposed by the Lemon Law are directed to the manufacturer and not to the dealer. 6 *Del.C.* § 5001(3) defines "manufacturer" to mean "a person engaged in the business of manufacturing, assembling or distributing automobiles, who will, under normal business conditions during the year, manufacture, assemble or distribute to dealers at least 10 automobiles". A "dealer" is defined to mean "a person actively engaged in the business of buying, selling or exchanging at retail and who has an established place of business." 6 *Del.C.* § 5001(2). It is not contended that Concord is a manufacturer under that definition. Hence the claim under the Lemon Law against Concord cannot be pursued and must be dismissed.

**II.**

Plaintiffs contend that Concord and Chrysler violated the Magnuson–Moss Consumer Products Warranty Act, 15 *U.S.C.* § 2301 *et seq.* [Act]. Under § 2308 of that Act a supplier is prohibited from disclaiming or modifying implied warranties where it has entered into a written warranty or service contract with the consumer. *Norman Gershman's* at 1072–3.

■ It is not contended that Concord made any written warranty or entered into

any service contract with plaintiffs. Therefore, Concord is not within the purview of that Act.

With respect to Chrysler the existence and content of a written warranty has not been explored factually to the extent appropriate for consideration of partial summary judgment for that issue. It is common knowledge that most automobile manufacturers do provide warranties to purchasers of new automobiles. Television advertisements by Chrysler indicate it provides such warranties. That should be explored through discovery directed to Chrysler and Concord. Until that has been developed, summary judgment on that subject cannot be considered.

### III.

Based on the foregoing considerations, I conclude that defendants have failed to establish that they are entitled to summary judgment on the issues raised, with the exception of the plaintiffs' claim against Concord under the Delaware Lemon Law. Facts upon which this decision relied in denying these motions must be proved by plaintiffs at trial. Partial summary judgment is GRANTED in favor of Concord on the issues of inapplicability of the Delaware Lemon Law and the Magnuson–Moss Act to Concord. In all other respects, defendants' motions for partial summary judgment are DENIED.