# DAIMLERCHRYSLER CORPORATION *v.* LINDA ALLARD (SC 17175)

Norcott, Katz, Palmer, Vertefeuille and Zarella, Js.

■ ■

■

■

Argued September 21—officially released December 7, 2004

■

*Justin E. Proper*, with whom was *Jon B. Waldorf*, pro hac vice, for the appellant (plaintiff).

*Garry Desjardins*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Phillip Rosario*, assistant attorney general, for the appellee (intervening defendant).

*Opinion*

VERTEFEUILLE, J. The plaintiff, DaimlerChrysler Corporation, appeals from the judgment of the trial court denying its application to correct an arbitration award rendered in favor of the defendant, Linda Allard,[1] pursuant to the statutory provisions regulating new automobile warranties, commonly referred to as the lemon law, General Statutes § 42-179 et seq. On appeal, the plaintiff contends that the trial court improperly denied its application to correct the arbitration award despite the fact that the arbitration panel had exceeded its authority by awarding the defendant a replacement

---

[1] Although the defendant has not filed a brief in this court, the state department of consumer protection, which intervened as a defendant in the trial court, has assumed responsibility for her interests and did file a brief. References herein to the defendant are to Linda Allard.

vehicle that was not identical or comparable to her original vehicle as authorized by General Statutes § 42-181 (c) (1). We conclude that the question of whether the replacement vehicle awarded to the defendant was comparable to her defective vehicle is a factual finding that was made by the arbitration panel. Because there was substantial evidence in the record of the arbitration proceeding to support the panel's finding that the replacement vehicle awarded was comparable to the defendant's original vehicle, we affirm the judgment of the trial court.

The arbitration panel reasonably could have found the following facts. On September 23, 2000, the defendant purchased a 2000 model year Jeep Cherokee Sport (Sport) from Capitol Garage in Willimantic. During the Sport's first 24,000 miles of operation, the defendant experienced several serious problems with the vehicle. Specifically, the Sport emitted a puffing noise from the muffler, and a banging noise from the transmission. Moreover, the Sport exhibited a leak in the transmission case, a malfunctioning indicator light, and an air conditioning failure. As a result, the defendant had the Sport serviced on eight separate occasions during its first 24,000 miles of operation, rendering it unusable for a total of approximately thirty-five days during this period.[2] The repairs included replacing the transmission, readjusting the rear hatch, and replacing the air conditioning system. After the Sport had surpassed the 24,000 mile mark, the defendant experienced further problems with the vehicle, including gas seeping into the passenger compartment and continued banging in the transmission.

---

[2] Under the lemon law, a consumer is required to report a motor vehicle's nonconformity with applicable express warranties within two years of delivery of the vehicle or during the vehicle's first 24,000 miles of operation, whichever comes first. General Statutes § 42-179 (b).

Following a thirteenth repair attempt in July, 2002, Allard sought relief under the automobile dispute settlement program pursuant to the lemon law provisions, §§ 42-179[3] and 42-181.[4] A hearing before a panel of three arbitrators was held on October 9, 2002, when both

[3] General Statutes § 42-179 (b) provides: "If a new motor vehicle does not conform to all applicable express warranties, and the consumer reports the nonconformity to the manufacturer, its agent or its authorized dealer during the period of two years following the date of original delivery of the motor vehicle to a consumer or during the period of the first twenty-four thousand miles of operation, whichever period ends first, the manufacturer, its agent or its authorized dealer shall make such repairs as are necessary to conform the vehicle to such express warranties, notwithstanding the fact that such repairs are made after the expiration of the applicable period."

[4] General Statutes § 42-181 provides in relevant part: " (a) The Department of Consumer Protection, shall provide an independent arbitration procedure for the settlement of disputes between consumers and manufacturers of motor vehicles which do not conform to all applicable warranties under the terms of section 42-179. The commissioner shall establish one or more automobile dispute settlement panels which shall consist of three members appointed by the Commissioner of Consumer Protection, only one of whom may be directly involved in the manufacture, distribution, sale or service of any product. . . .

"(c) . . . An expert shall sit as a nonvoting member of an arbitration panel whenever oral testimony is presented. Such experts may be recommended by the Commissioner of Motor Vehicles at the request of the Commissioner of Consumer Protection. An arbitration panel shall, as expeditiously as possible, but not later than sixty days after the time the consumer files the complaint form together with the filing fee, render a fair decision based on the information gathered and disclose its findings and the reasons therefor to the parties involved. . . . The arbitration decision shall be final and binding as to the rights of the parties pursuant to section 42-179, subject only to judicial review as set forth in this subsection. The decision shall provide appropriate remedies, including, but not limited to one or more of the following:

"(1) Replacement of the vehicle with an identical or comparable new vehicle acceptable to the consumer;

"(2) Refund of the full contract price, plus collateral charges as specified in subsection (d) of said section 42-179;

"(3) Reimbursement for expenses and compensation for incidental damages as specified in subsection (d) of said section 42-179;

"(4) Any other remedies available under the applicable warranties, section 42-179, this section and sections 42-182 to 42-184, inclusive, or the Magnuson-Moss Warranty-Federal Trade Commission Improvement Act, 88 Stat. 2183 (1975), 15 USC 2301 et seq., as in effect on October 1, 1982, other than

parties presented evidence and testimony. The defendant was represented by counsel, and the plaintiff was represented by one of its district managers, Byron Sanders. At the hearing, the defendant and her husband testified about the details of the Sport's problems and the extent of the attempted repairs. Sanders testified on behalf of the plaintiff that the banging noise and additional problems experienced by the defendant in her use of the Sport constituted normal conditions for the vehicle. In its written award issued immediately following the hearing, the arbitration panel found that the defendant was entitled to relief under the lemon law and ordered the plaintiff to accept return of the defendant's defective Sport and furnish her with a new 2003 model year Jeep Grand Cherokee Laredo (Laredo). Since the defendant would be receiving a replacement vehicle three model years newer than her original vehicle, she was ordered to pay the plaintiff $1230 upon receipt of the Laredo.[5]

The plaintiff thereafter filed an application to correct the arbitration award in the Superior Court. The trial court subsequently granted a motion filed by the state department of consumer protection seeking to intervene in the action as a party defendant. See footnote 1 of this opinion. At trial, the plaintiff argued that the arbitrators had exceeded their authority in awarding the defendant a new 2003 Laredo as a replacement for her defective vehicle. Specifically, the plaintiff argued that under § 42-181 (c) (1), the panel was authorized to award only an "identical or comparable" replacement

---

repair of the vehicle. The decision shall specify a date for performance and completion of all awarded remedies. Notwithstanding any provision of the general statutes or any regulation to the contrary, the Department of Consumer Protection shall not amend, reverse, rescind or revoke any decision or action of an arbitration panel. . . ."

[5] Although the arbitration panel stated in its written award that a vehicle that is two model years newer was a comparable vehicle, it noted that a comparable 2002 vehicle was not available in the present case.

vehicle, and that the Laredo did not constitute an "identical or comparable" vehicle under the statute. The trial court concluded that the arbitrators did not exceed their authority in awarding the defendant the Laredo. Specifically, the trial court held that this award was permissible under the plain language of § 42-181 (c).[6] The plaintiff then appealed from the trial court's judgment to the Appellate Court and we thereafter transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

As a preliminary matter, we set forth the applicable standard of review and legal principles governing our resolution of this claim. "[J]udicial review of lemon law arbitration awards is governed by § 42-181 (c) (4), which provides in relevant part: The court shall conduct a de novo review of the questions of law raised in the application. . . . In reviewing questions of fact, the court shall uphold the award unless it determines that the factual findings of the arbitrators are not supported by substantial evidence in the record . . . . Pursuant to this test, a reviewing court must determine whether there is substantial evidence in the record to support the arbitrators' findings of fact and whether the conclusions drawn from those facts are reasonable. . . . [I]n determining whether an [arbitration panel's] finding is supported by substantial evidence, a court must defer . . . to the [arbitration panel's] right to believe or disbelieve the evidence presented by any witness, even an expert, in whole or in part. . . . This limited standard of review dictates that, [w]ith regard to questions of fact, it is neither the function of the trial court nor of this court to retry the case or to substitute its judgment for that of the [arbitration panel]." (Citations omitted; internal quotation marks omitted.) *General Motors*

---

[6] While the trial court's decision did not address specifically the issue of comparability of the vehicles, it did not vacate any of the factual findings of the arbitration panel.

*Corp.* v. *Dohmann*, 247 Conn. 274, 281–82, 722 A.2d 1205 (1998). "This so-called substantial evidence rule is similar to the sufficiency of the evidence standard applied in judicial review of jury verdicts, and evidence is sufficient to sustain . . . [a] finding if it affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . The fact that a possibility exists that two inconsistent conclusions may be drawn from the evidence does not prevent the arbitrators' finding from being supported by substantial evidence." (Citation omitted; internal quotation marks omitted.) *Connecticut Ins. Guaranty Assn.* v. *Zasun*, 52 Conn. App. 212, 225, 725 A.2d 406 (1999). With these principles in mind, we address the merits of the plaintiff's arguments.

The plaintiff first claims that the question of whether the arbitration panel exceeded its authority by awarding a Laredo to the defendant is a question of law. We disagree with the plaintiff's formulation of the issue on appeal. Section 42-181 (c) (1) provides the lemon law arbitration panel with the authority to order the replacement of a defective vehicle with "an identical or comparable new vehicle . . . ." See footnote 4 of this opinion. The gravamen of the plaintiff's application to correct the arbitration award is that the Laredo is not a comparable new vehicle to the Sport, the defendant's defective vehicle. We conclude that the question of the comparability of the two vehicles is a question of fact. A finding of comparability ultimately turns on the value of the items being compared. This court previously has determined that " '[f]air market value' is a question of fact." *State* v. *Goggin*, 208 Conn. 606, 618, 546 A.2d 250 (1988). "In assessing the value of property . . . the trier arrives at his own conclusions by weighing the opinions of the appraisers, the claims of the parties, and his own general knowledge of the elements going to establish value, and then employs the most appropriate method

of determining valuation." *Turgeon* v. *Turgeon*, 190 Conn. 269, 274, 460 A.2d 1260 (1983). A finding of comparability also includes other considerations such as the size of the vehicles and the options available on the vehicles, both of which are also factual findings. The question of whether the Laredo awarded to the defendant is comparable to her defective vehicle therefore involves a question of fact and invokes the substantial evidence test.

An examination of the record of the proceedings before the arbitration panel reveals substantial evidence supporting the panel's conclusion that the Laredo awarded by the arbitration panel was comparable to the defendant's defective Sport.[7] At the time of the arbitration hearing, the plaintiff had discontinued manufacturing the Sport, the model purchased by the defendant, thus making it impossible for the plaintiff to furnish an identical replacement vehicle. The vehicle that replaced the defendant's originally purchased vehicle in the plaintiff's product line was the Jeep Liberty Sport (Liberty). The next most expensive vehicle in the plaintiff's product line is the Laredo. When stating their preferences for a replacement vehicle, the defendant and her husband testified that they favored the Laredo over the Liberty. The defendant testified at the hearing that the Liberty would not suit her needs because it was smaller than the Sport, her originally purchased vehicle. The defendant's husband further testified that "the Liberty is a little less than what we have in the . . . [Sport]." As such, the Laredo and the Liberty were the two possible replacement vehicles in the plaintiff's product line that could be awarded to the defendant.

---

[7] The arbitration panel found that "the most comparable vehicle is a [Laredo], because the alternative vehicle offered by the [plaintiff] (Jeep Liberty) is substantially smaller than their 2000 [Sport], and would not accommodate the [defendant's] needs."

When asked whether he thought the Laredo was comparable to the defendant's original vehicle and whether he had any information about the Laredo, Sanders responded that he did not have any information about the various vehicles within the Jeep Grand Cherokee product line. Sanders did not respond to the question about the comparability of the Laredo with the defendant's original vehicle. Tim Clark, the arbitration panel's technical expert, testified during the hearing that neither the Liberty nor the Laredo was exactly comparable to the defendant's defective vehicle. Clark further noted that because production of the Sport, the defendant's original vehicle, had been discontinued, the defendant could obtain a vehicle that was "close but never the same . . . ." He testified, in effect, that the panel could find that either the Liberty or the Laredo was comparable.

The arbitration panel found that the Laredo was "the most comparable vehicle" to the defendant's original defective vehicle and thus was an appropriate replacement vehicle under the lemon law. That finding was supported by the testimony of Clark, together with the testimony of the defendant and her husband. Moreover, this finding was not contradicted by Sanders. Although Clark's testimony could support a finding that either the Liberty or the Laredo was comparable to the Sport, we emphasize that "[t]he fact that a possibility exists that two inconsistent conclusions may be drawn from the evidence does not prevent the arbitrators' finding from being supported by substantial evidence." (Internal quotation marks omitted.) *Connecticut Ins. Guaranty Assn.* v. *Zasun,* supra, 52 Conn. App. 225. We therefore conclude that there was substantial evidence in the record of the arbitration proceeding to support the finding that the Laredo was comparable to the defendant's original vehicle.[8]

---

[8] The plaintiff also contends that the arbitration award put the defendant in a better position than she would have been had her vehicle not been

Addressing the plaintiff's remaining claims, we find them to be without merit. First, the plaintiff relies on *Robinson* v. *Coughlin*, 266 Conn. 1, 830 A.2d 1114 (2003), as support for its contention that the arbitration panel acted outside the scope of its authority in awarding the defendant the Laredo. *Robinson*, however, did not address the lemon law, but instead interpreted language in the Uniform Fraudulent Transfer Act, General Statutes § 52-552a et seq., which the plaintiff claims is analogous to the language in the lemon law that grants the arbitrators broad discretion. We find that the interpretation of the provisions of the Uniform Fraudulent Transfer Act in *Robinson* is irrelevant to the lemon law, and we conclude that *Robinson* is, therefore, inapposite to the present case. Finally, the plaintiff argues that, to the extent that the lemon law gives arbitrators unlimited authority to fashion relief contrary to the language of the statutory provisions, it is unconstitutional. Because the plaintiff neither preserved this issue at trial, nor sought review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), or the plain error doctrine, we decline to review this claim.

The judgment is affirmed.

In this opinion the other justices concurred.

---

defective. We reject this claim in light of our conclusion that the evidence supports the arbitration panel's conclusion that the Laredo was comparable to the defendant's original vehicle.