METROPOLITAN DISTRICT COMMISSION *v.*
AFSCME, COUNCIL 4, LOCAL 184
(AC 25591)

Dranginis, Gruendel and Harper, Js.

Argued April 4—officially released June 21, 2005

*Anthony J. Palermino*, for the appellant (plaintiff).

*J. William Gagne, Jr.*, with whom, on the brief, was *P. Jo Anne Burgh*, for the appellee (defendant).

*Opinion*

DRANGINIS, J. In this arbitration case, the plaintiff, the Metropolitan District Commission, appeals from the judgment of the trial court denying its application to vacate the arbitration award and ordering it to reinstate an employee who had removed a magazine from the home of a customer. On appeal, the plaintiff claims that the court improperly denied its application to vacate after finding that the award did not violate an explicit, well-defined and dominant public policy. We affirm the judgment of the trial court.

The following facts are relevant to the plaintiff's appeal. The plaintiff was created pursuant to a special act of the legislature to provide, among other things, water service in and around Hartford County. In 1993, the plaintiff established an automated meter reading program, requiring that the water meters in its customers' homes be replaced with state of the art meters that transmit water usage via telephone wires to the plaintiff's computer service. The plaintiff hired Christine Carman, in 1994, to install the automated meters, a position that required that she enter the homes of the

plaintiff's customers to perform her services. On August 28, 1997, a Glastonbury customer complained that Carman had taken a collector's magazine from a home in which she was installing an automated meter. Carman repeatedly denied to her superiors that she had taken the magazine. The next day, the Glastonbury police summoned Carman to the police station, where she admitted that she had the magazine. On November 3, 1997, the plaintiff discharged Carman for lying and theft.

The defendant union, the American Federation of State, County and Municipal Employees, Council 4, Local 184, filed a grievance on behalf of Carman. The issue presented to the three member panel of arbitrators stated: "Was the termination of Ms. Christine Carman's employment relationship with the [plaintiff] on November 3, 1997 for just cause? If not, what shall the remedy be?" In their award, the arbitrators found that the defendant "contended that [Carman] had taken the magazine in her work pail through error and that she had initially denied taking it out of fear that she would lose her job.

"This panel does not condone her lying out of fear that she would lose her job. Even granting that she may have taken the magazine through error or oversight, she should have informed her employer as soon as she realized that she had the magazine in her possession. Notwithstanding, there was no indication that the magazine had any special value to her as a collector's item. In this light, therefore, the panel is convinced that there is no proportionality between her actions and the penalty meted out. The award will reflect a more reasonable measure of the relationship between the two. The termination of [Carman's] employment relationship with the [plaintiff] on November 3, 1997, was not for just cause. She shall be returned to work without back pay on the Monday following the receipt of this award." The award was dated January 18, 2000.

The standard of review applicable to arbitration awards depends on the nature of the challenge. With a voluntary, unrestricted submission to an arbitration panel, as is the case before us, "the court may only examine the submission and the award to determine whether the award conforms to the submission. . . . In making such a comparison when the submission is unrestricted, the court will not review the evidence or legal questions involved, but is bound by the arbitrator's legal and factual determinations. . . .

"Certain conditions do exist, however, under which we conduct a more searching review of arbitral awards. . . . [Our Supreme Court has stated] that there are three grounds for vacating an award when the submission is unrestricted. These grounds arise when the award (1) rules on the constitutionality of a statute, (2) violates clear public policy or (3) contravenes one or more of the statutory proscriptions of General Statutes § 52-418." (Citation omitted; internal quotation marks omitted.) *Metropolitan District Commission* v. *Local 184*, 77 Conn. App. 832, 838, 825 A.2d 218 (2003). The issue raised in this appeal concerns the second exception, that is, whether the award reinstating Carman to her employment with the plaintiff violates a specific public policy.

"[W]hen a challenge to a voluntary arbitration award rendered pursuant to an unrestricted submission raises a legitimate and colorable claim of violation of public policy, the question of whether the award violates public policy requires de novo judicial review." (Internal quotation marks omitted.) *State* v. *AFSCME, AFL-CIO, Council 4, Local 2663*, 257 Conn. 80, 90, 777 A.2d 169 (2001).

"The public policy exception applies only when the award is clearly illegal or clearly violative of a strong public policy. . . . A challenge that an award is in con-

travention of public policy is premised on the fact that the parties cannot expect an arbitration award approving *conduct which is illegal* or contrary to public policy to receive judicial endorsement any more than parties can expect a court to enforce such a contract between them. . . . When a challenge to the arbitrator's authority is made on public policy grounds, however, the court is not concerned with the correctness of the arbitrator's decision but with the lawfulness of enforcing the award. . . . Accordingly, the public policy exception to arbitral authority should be narrowly construed and [a] court's refusal to enforce an arbitrator's interpretation of [collective bargaining agreements] is limited to situations *where the contract as interpreted* would violate some explicit public policy that is well defined and dominant, and is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests. . . . The party challenging the award bears the burden of proving that illegality or conflict with public policy is clearly demonstrated." (Emphasis added; internal quotation marks omitted.) Id., 90–91.

The arbitrators identified the pertinent clause of the parties' collective bargaining agreement, which we quote in relevant part: "17.14 Any employee may be suspended from the job when disciplinary action is contemplated if the infraction is of a serious nature as to warrant suspension or discharge. . . . Disciplinary action shall be for just cause, shall be applied in a fair manner and shall be consistent with [the] infraction for which the disciplinary action is being applied."

We summarize the position of the parties on appeal. The plaintiff claims that the arbitrators' award violates the public policy against theft. The defendant counters that Carman was not arrested for, let alone convicted of, theft, and the arbitrators did not find that she intended to deprive the magazine's owner of the prop-

erty. Furthermore, the defendant argues, the award is proportionate to the offense, as it resulted in Carman's being suspended without pay for more than two years.[1]

The only way the plaintiff can prevail in this appeal is if the award violates a clearly articulated public policy. There is no question that this state has a clearly stated public policy against theft; see General Statutes § 53a-118 et seq.; and there are appellate cases that support, on public policy grounds, termination of employment or other discipline of an employee for theft. See, e.g., *Groton* v. *United Steelworkers of America*, 254 Conn. 35, 757 A.2d 501 (2000) (employee convicted of larceny of employer's funds); *Board of Education* v. *Local 566, Council 4, AFSCME*, 43 Conn. App. 499, 683 A.2d 1036 (1996) (employee convicted of embezzling union funds demoted to position in which he would not be responsible for publicly owned property), cert. denied, 239 Conn. 957, 688 A.2d 327 (1997); *State* v. *Council 4, AFSCME*, 27 Conn. App. 635, 608 A.2d 718 (1992). The issue in this case, therefore, turns on whether Carman committed a theft when she took the magazine from the Glastonbury home. In this case, the arbitrators did not find that Carmen committed a theft[2] and, for that reason, we conclude that the court properly denied the plaintiff's application to vacate the award.

---

[1] We note that the arbitrators did not place a value on the magazine in question, but found that the magazine had no "special value to [Carman] as a collector's item." It is not clear to us from our review of the award whether the magazine itself was valuable as a collector's item or whether it was a magazine about collectables. Nonetheless, we note that our theft statutes are not predicated on the value of what is taken to the person who takes it or to a third person, but by the intrinsic value of the item and by the fact that the rightful owner has been deprived wrongfully of possession thereof. See General Statutes, Penal Code, title 53a, part IX: Offenses, larceny, robbery and related offenses; General Statutes § 53a-118 et seq. It appears that the arbitrators' finding pertains to the proportionality issue in the collective bargaining agreement.

[2] The record also is silent as to whether the police filed charges against Carman or whether she was convicted of larceny.

"The court shall conduct a de novo review of the questions of law raised in the application. . . . In reviewing questions of fact, the court shall uphold the award unless it determines that the factual findings of the arbitrators are not supported by substantial evidence in the record and that the substantial rights of the moving party have been prejudiced. If the arbitrators fail to state findings or reasons for the award, or the stated findings or reasons are inadequate, the court shall search the record to determine whether a basis exists to uphold the award. . . . [General Statutes § 52-418] confines the court's review of the application to the record of the proceedings before the arbitration panel. . . .

"Our Supreme Court has determined that in reviewing questions of fact in arbitration proceedings, a reviewing court must determine whether there is substantial evidence in the record to support the arbitrators' findings of fact and whether the conclusions drawn from those facts are reasonable. . . . This so-called substantial evidence rule is similar to the sufficiency of the evidence standard applied in judicial review of jury verdicts, and evidence is sufficient to sustain . . . [a] finding if it affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . The fact that a possibility exists that two inconsistent conclusions may be drawn from the evidence does not prevent the arbitrators' finding from being supported by substantial evidence." (Citations omitted; internal quotation marks omitted.) *Burns* v. *General Motors Corp.*, 80 Conn. App. 146, 151–52, 833 A.2d 934, cert. denied, 267 Conn. 909, 840 A.2d 1170 (2003).

Questions of credibility are factual determinations. *State* v. *Alfonso*, 195 Conn. 624, 633–34, 490 A.2d 75 (1985). The arbitrators accepted Carman's explanation that the magazine found its way into her lunch pail by error or oversight. This court is bound by that finding.

We recognize that the facts of this case are particularly difficult. The arbitrators did not condone Carman's failure to tell her supervisors that she had the magazine for whatever reason and saw fit to reinstate her only after docking her more than two years of back pay. We fully understand why the plaintiff appealed. In its brief here, the plaintiff took pains to explain why it doubts whether it can trust Carman in the home of its clients. We do not question the validity of the plaintiff's concern. In the collective bargaining agreement, however, the plaintiff elected to contract for arbitration of disputes with the union. Nonetheless, the award does not violate any clearly defined, explicit public policy, and we therefore must affirm the decision of the trial court denying the plaintiff's application to vacate the award.

The judgment is affirmed.

In this opinion the other judges concurred.