HH EAST PARCEL, LLC *v.* HANDY AND HARMAN, INC.
(SC 18055)

Norcott, Palmer, Vertefeuille, Zarella and Schaller, Js.

Argued February 8—officially released June 3, 2008

*John F.X. Peloso, Jr.*, with whom was *Thomas J. Donlon,* for the appellant (defendant).

*Andrew J. McDonald*, with whom were *Timothy G. Ronan* and, on the brief, *Cara Ann Ceraso*, for the appellee (plaintiff).

*Opinion*

NORCOTT, J. In this appeal, we consider the appropriate level of deference that the courts, in performing their de novo review of whether an arbitration award violates public policy, should give to the arbitrator's factual findings. The defendant, Handy and Harman, Inc., appeals[1] from the judgment of the trial court granting the application of the plaintiff, HH East Parcel, LLC, to confirm, and denying the defendant's application to vacate, an arbitration award rendered in favor of the plaintiff. On appeal, the defendant claims that the trial court, in confirming the award, improperly deferred to the arbitrator's factual findings when the court concluded that a per diem provision in a contract for the sale and remediation of real estate was a valid liquidated damages clause, rather than a penalty clause, the enforcement of which would violate the public policy of Connecticut. We conclude that the trial court properly deferred to the arbitrator's factual findings in determining that the award did not violate public policy. Accordingly, we affirm the judgment of the trial court.

The record reveals the following undisputed background facts and procedural history. On or about December 31, 2003, the defendant sold real property located in Fairfield to the plaintiff for $8 million. The purchase and sale agreement (purchase agreement) required the defendant to demolish all existing buildings and structures on the property, and to remediate all environmental contamination on the property by December 31, 2004. The purchase agreement also pro-

---

[1] The defendant appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

vided that time was of the essence with regard to the remediation. Sections 14 and 15 of the purchase agreement contained a per diem clause that required the defendant to pay to the plaintiff $5000 for each day after December 31, 2004, that the defendant had failed to complete the demolition and remediation as specified therein.

Although the plaintiff paid the defendant $8 million and received title to the property, the defendant failed to complete the remediation by December 31, 2004, as agreed to by the parties. The defendant also failed to pay the necessary contractors and subcontractors for remediation services rendered by December 31, 2004, and they placed various mechanic's liens on the property. Thus, the parties then entered into an environmental indemnification agreement (indemnification agreement) that required the defendant to indemnify and hold harmless the plaintiff for the losses caused by the defendant's failure to complete the remediation.

Thereafter, on April 5, 2005, the plaintiff filed a demand for arbitration with the American Arbitration Association (association) pursuant to § 6 of the indemnification agreement,[2] and served a copy of that demand

---

[2] The arbitration clause, § 6, of the indemnification agreement, provides: "Any disputes which the parties may have with respect to the parties' obligations under this Agreement shall be resolved by expedited, binding arbitration, conducted by a sole arbitrator, in Stamford, CT, in accordance with the rules of the American Arbitration Association, then prevailing, or any successor organization thereto having jurisdiction and having offices in Connecticut. The parties shall agree upon the arbitrator, to resolve such dispute, within ten (10) days of a notice of dispute hereunder. If the parties shall fail to agree upon the designation of such arbitrator within such ten (10) day period, then either party may apply to the American Arbitration Association in Connecticut, or any successor organization thereto having jurisdiction and having offices in Connecticut, for the designation of such arbitrator. The designated arbitrator shall conduct such hearings and investigations as (s)he may deem appropriate and the decision of the arbitrator, absent fraud, bad faith, coercion or other misdeed, shall be conclusively binding upon the parties. Each party shall pay its own counsel fees and expenses, if any, in connection with any such arbitration proceeding, but

on the defendant.[3] Attorney Edward V. Lahey, Jr., was selected as the arbitrator, and he conducted a two day arbitration in Stamford. At the arbitration, the defendant did not dispute its liability for breach of the purchase agreement, but did dispute the validity of the $5000 per diem clause, which the defendant claimed was an unenforceable penalty. The plaintiff contended, however, that the per diem clause was a valid liquidated damage provision. The arbitrator issued an award in December, 2005, upon concluding that the $5000 per diem clause was a reasonable and valid liquidated damages provision that had been properly negotiated by the parties. The arbitrator ordered the defendant to pay the plaintiff $5000 per day for all unpaid per diem charges occurring since January 1, 2005, through November 30, 2005, for a total of $1,670,000, and directed the defendant to begin making monthly payments on that sum starting January 1, 2006. The arbitrator also ordered the defendant to pay the plaintiff 6 percent interest on all unpaid per diem charges, and to fund and complete the demolition and remediation of the property without delay.[4]

Shortly thereafter, the plaintiff brought this application to confirm the arbitration award pursuant to General Statutes § 52-417,[5] and the defendant filed its

the non-prevailing party in such arbitration, shall pay all expenses and fees of the arbitrator."

[3] Prior to initiating arbitration proceedings, the plaintiff had served the defendant with a written " 'notice of loss' " and demanded indemnification.

[4] The arbitrator also ordered the defendant to report to the plaintiff concerning all contractors and subcontractors who had worked on the demolition and remediation effort, to reconcile their accounts, and to cause the satisfaction, challenge and discharge of all liens on the property. The arbitrator also directed the defendant, in accordance with the indemnification agreement, to pay the arbitration fees and expenses, although each party was to be responsible for its own attorney's fees.

[5] General Statutes § 52-417 provides: "At any time within one year after an award has been rendered and the parties to the arbitration notified thereof, any party to the arbitration may make application to the superior court for the judicial district in which one of the parties resides or, in a controversy concerning land, for the judicial district in which the land is

application and cross motion to vacate the award pursuant to General Statutes § 52-418 (a),[6] claiming, inter alia, that "the award violate[d] public policy by awarding a draconian, limitless penalty . . . ."[7] The trial court relied on our decision in *Schoonmaker* v. *Cummings & Lockwood of Connecticut, P.C.*, 252 Conn. 416, 747 A.2d 1017 (2000), and noted that, although it was required to review the award de novo because the defendant claimed that it violated the well established public policy against the enforcement of penalty clauses in contracts, it nevertheless was obligated to defer to the arbitrator's factual findings and interpretation of the

situated or, when the court is not in session, to any judge thereof, for an order confirming the award. The court or judge shall grant such an order confirming the award unless the award is vacated, modified or corrected as prescribed in sections 52-418 and 52-419."

[6] General Statutes § 52-418 (a) provides: "Upon the application of any party to an arbitration, the superior court for the judicial district in which one of the parties resides or, in a controversy concerning land, for the judicial district in which the land is situated or, when the court is not in session, any judge thereof, shall make an order vacating the award if it finds any of the following defects: (1) If the award has been procured by corruption, fraud or undue means; (2) if there has been evident partiality or corruption on the part of any arbitrator; (3) if the arbitrators have been guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown or in refusing to hear evidence pertinent and material to the controversy or of any other action by which the rights of any party have been prejudiced; or (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made."

[7] The defendant also claimed that: (1) the award was made by an arbitrator not appointed in accordance with the parties' indemnification agreement because of a false disclosure by the arbitrator at the time of his appointment; (2) the arbitrator had a "clear personal interest" that was not disclosed in advance; (3) the arbitrator exceeded his authority by enforcing a penalty clause, and the scope of the submission by deciding and relying upon an issue expressly not submitted to him; (4) the award was rendered untimely in violation of General Statutes § 52-416 (a); and (5) the award was made notwithstanding the defendant's timely request for a continuance to obtain relief from an order prohibiting the offering of evidence. The trial court rejected these claims, and the defendant has not pursued them further in this appeal.

underlying contract. The trial court determined that the arbitrator properly applied Connecticut law to conclude that the purchase agreement contained a valid liquidated damages clause based on his findings that the damages resulting from the breach of the contract would be difficult to estimate or provide, that the parties had intended to liquidate any resulting damages, and that the amount agreed upon in the contract was not unreasonable. The trial court also conducted, however, an additional review of the record in detail to determine whether the arbitrator's findings were in fact supported by substantial evidence, and concluded that the findings were supported by: (1) the negotiated nature of the per diem charge and the date that it would begin; and (2) the difficulties of ascertaining economic loss because of the fluctuating liens on the property and determining how long the remediation would take. Accordingly, the trial court rejected the defendant's claim that the arbitration award violated public policy, and rendered judgment confirming the award. This appeal followed.[8]

On appeal, the defendant claims that the trial court improperly deferred to the arbitrator's factual findings,

[8] In reviewing the record, we, sua sponte, questioned the subject matter jurisdiction of the trial court over the defendant's claims in the present case in light of our recent decision in *Bloomfield* v. *United Electrical, Radio & Machine Workers of America, Connecticut Independent Police Union, Local 14*, 285 Conn. 278, 939 A.2d 561 (2008). In *Bloomfield*, we concluded that the thirty day filing period set forth by General Statutes § 52-420 (b), which is subject matter jurisdictional in nature, "applies to an application to vacate an arbitration award on the ground that it violates public policy." Id., 292. It appeared from the multiple facsimile machine dates on the award included in the record, specifically December 23 and December 27, 2005, that the defendant's objections and cross motion to vacate, which was filed on January 26, 2006, may have been filed more than thirty days from the issuance of the award. Accordingly, we directed the parties to file supplemental briefs addressing this question. They have advised us that the association originally issued the award to the parties by facsimile on December 27, 2005. Thus, the plaintiff's application and cross motion were filed within the thirty day time limitation of § 52-420 (b), and the trial court had subject matter jurisdiction over this case.

because the issue of whether the per diem clause was a penalty is a mixed question of fact and law subject to de novo review. The defendant also claims that the trial court improperly confined its review to the issue of whether the arbitrator's findings were supported by substantial evidence, and claims that, even under that more restrictive standard of review, the evidence in the record does not support the arbitrator's conclusion that the per diem clause was not an illegal penalty. In response, the plaintiff relies on our recent decision in *C. R. Klewin Northeast, LLC* v. *Bridgeport*, 282 Conn. 54, 919 A.2d 1002 (2007), and contends that, in conducting its public policy analysis, the trial court properly relied upon and deferred to the arbitrator's factual findings. The plaintiff further argues that, although the trial court did not need to conduct that level of review, that court nevertheless properly determined that the arbitrator's factual finding that the parties intended to liquidate their damages, rather than impose an illegal penalty, is supported by substantial evidence in the record.

At the outset, we note that whether the trial court engaged in the correct level of review of the arbitrator's decision presents a question of law over which our review is plenary. See id., 93; see also *LaSalla* v. *Doctor's Associates, Inc.*, 278 Conn. 578, 586, 898 A.2d 803 (2006) ("the proper scope of review, in both the trial court and this court, for a colorable claim that an award violated public policy is plenary").

Most of the general principles at issue herein are undisputed, namely, that "arbitration is a creature of contract, whereby the parties themselves, by agreement, define the powers of the arbitrators. . . . Moreover, we have stated that when the parties have established the authority of the arbitrator, the extent of our judicial review of the award is delineated by the scope of the parties' agreement. . . . When the parties

have not restricted the scope of the arbitrator's authority, the resulting award is not subject to de novo review even for errors of law so long as the award conforms to the submission. . . .

"The long-standing principles governing consensual arbitration are, however, subject to certain exceptions. Although we have traditionally afforded considerable deference to the decisions of arbitrators, we have also conducted a more searching review of arbitral awards in certain circumstances. In *Garrity* v. *McCaskey*, [223 Conn. 1, 6, 612 A.2d 742 (1992)], this court listed three recognized grounds for vacating an award: (1) the award rules on the constitutionality of a statute . . . (2) the award violates clear public policy . . . or (3) the award contravenes one or more of the statutory proscriptions of § 52-418 (a). . . . The judicial recognition of these grounds for vacatur evinces a willingness, in limited circumstances, to employ a heightened standard of judicial review of arbitral conclusions, despite the traditional high level of deference afforded to arbitrators' decisions when made in accordance with their authority pursuant to an unrestricted submission." (Citations omitted; internal quotation marks omitted.) *Schoonmaker* v. *Cummings & Lockwood of Connecticut, P.C.*, supra, 252 Conn. 426–28.

"A court's refusal to enforce an arbitrator's award . . . because it is contrary to public policy is a specific application of the more general doctrine, rooted in the common law, that a court may refuse to enforce contracts that violate law or public policy. . . . This rule is an exception to the general rule restricting judicial review of arbitral awards. . . . The exception, however, is narrowly construed and . . . is limited to situations where the contract as interpreted would violate some explicit public policy that is well defined and dominant, and is to be ascertained by reference to the laws and legal precedents and not from general consid-

erations of supposed public interests. . . . To be vacated under the narrow public policy exception, the award must be clearly illegal or clearly violative of a strong public policy. . . . Furthermore, [t]he party challenging the award bears the burden of proving that illegality or conflict with public policy is clearly demonstrated." (Citations omitted; internal quotation marks omitted.) *C. R. Klewin Northeast, LLC* v. *Bridgeport*, supra, 282 Conn. 93–94.

The seminal case with respect to the nature of the judicial review given to a claim that an arbitration award violates public policy is *Schoonmaker* v. *Cummings & Lockwood of Connecticut, P.C.*, supra, 252 Conn. 416. In that case, which involved a public policy challenge under rule 5.6 of the Rules of Professional Conduct to a partnership agreement provision that had conditioned the receipt of retirement benefits on compliance with a noncompete clause, we concluded that, "where a party challenges a consensual arbitral award on the ground that it violates public policy, and where that challenge has a legitimate, colorable basis, de novo review of the award is appropriate in order to determine whether the award does in fact violate public policy."[9] Id., 429; see

---

[9] In *Schoonmaker*, we reasoned that "the identification and application of the public policy of this state presents considerations regarding which courts have greater expertise and knowledge than arbitrators, who are often drawn from the ranks of various professions including, but not limited to, the law. Because in this respect arbitrators and a reviewing court do not stand on equal ground, it comports with logic for the court to review the arbitrator's interpretation of an ethics rule de novo rather than to leave it to the arbitrators themselves to attempt to apply pertinent public policy. Moreover, given that it is the role of the reviewing court to articulate the actual policy objectives that emanate from a particular rule of conduct, so too is a reviewing court better suited to evaluate whether certain facts, as found by the arbitrator, comport with the specific public policy that is at issue." *Schoonmaker* v. *Cummings & Lockwood of Connecticut, P.C.*, supra, 252 Conn. 430. We also noted that "although in the course of rendering an award an arbitrator may consider whether the award sought would violate or comport with a clear public policy—as the arbitrator did in this case— often the question of whether the award does so will not arise until after the award has been rendered." Id. Finally, we noted that "the public policy exception is one of three that we have identified as exceptions to the rule

also id., 428–29 (discussing expressions of public policy in statutes, case law or administrative regulations and stating "whether . . . there exists a public policy mandate with which an arbitral award must conform . . . indisputably involves an issue of law properly resolved by an exercise of this court's plenary authority" [citations omitted; internal quotation marks omitted]). We emphasized, however, our "adhere[nce] to the long-standing principle that findings of fact are ordinarily left undisturbed upon judicial review," and "defer[red] to the arbitrator's interpretation of the agreements regarding the scope of the forfeiture upon competition provision, as well as the terms upon which postemployment benefits are offered to former employees. We conclude only that as a reviewing court, we must determine, pursuant to our plenary authority and giving appropriate deference to the arbitrator's factual conclusions, whether the forfeiture provision in question violates those policies." Id., 432. Indeed, we noted that "in undertaking de novo review of the plaintiff's public policy claim, *we defer to the arbitrator's interpretation of the agreements* . . . . We therefore do not substitute our own reading of the contract terms for that of the arbitrator, but intervene only to the extent that *those terms, as interpreted*, violate a clearly established public policy."[10] (Emphasis added; internal quotation marks omitted.) Id., 432 n.8.

---

of deference." Id., 430–31.

[10] We rejected the defendants' argument that, "by applying de novo review to an arbitrator's application of the ethics rules, we unwittingly open the floodgates of litigation to any party seeking to vacate an arbitration award that involves application of any one of the rules," including disputes over attorney's fees. *Schoonmaker* v. *Cummings & Lockwood of Connecticut, P.C.*, supra, 252 Conn. 435 n.12. We concluded that, "[t]he inquiry into the 'reasonableness' of attorney's fees under rule 1.5 [of the Rules of Professional Conduct] . . . although legal in nature, is intensely factual in application and as stated previously, we do not digress from the principle of deference to an arbitrator's findings of fact. . . . Therefore, in the context of a dispute involving rule 1.5, we would be bound to uphold an arbitrator's award if it was based upon reasonable factual findings." Id.

Our case law following *Schoonmaker* has emphasized that a reviewing court is bound by the arbitrator's factual findings in reviewing a claim that an award rendered in a consensual arbitration violates this state's public policy. See *State* v. *AFSCME, AFL-CIO, Council 4, Local 2663*, 257 Conn. 80, 95, 777 A.2d 169 (2001) ("To the extent that the plaintiff claims that the award violated public policy because the arbitrator misapplied the [contract's] definition of salaried employee, we decline to undertake judicial review of the arbitrator's factual determinations in interpreting the terms of the contract. The arbitrator made a factual determination that commission staff attorneys are hourly, rather than salaried employees."); *Groton* v. *United Steelworkers of America*, 254 Conn. 35, 52, 757 A.2d 501 (2000) (noting that "legal system . . . ordinarily give[s] great deference . . . to both the factual and legal determinations of the arbitrators," and that even in a de novo public policy challenge, "we give deference to the arbitrator's factual determinations" [citation omitted]).

The arbitrator's factual findings are equally binding when the public policy claim has been raised before the arbitrator in the form of a defense that the underlying contract is illegal. In *C. R. Klewin Northeast, LLC* v. *Bridgeport*, supra, 282 Conn. 95, we relied on *Schoonmaker*, and further explained the significance of the arbitrator's findings of fact. In that case, a city had claimed that the arbitration award was made pursuant to a construction contract that had been procured illegally, and that confirming it would violate the state's public policy against corruption in municipal contracting. Id., 92. We agreed with the contractor's argument that "the city's arguments conflate two issues: (1) whether enforcement of an arbitration award, which deals with the lawfulness of the award itself, violates public policy; and (2) whether the contract underlying

the award violates public policy because of its terms or the manner in which it was procured." Id. We noted that, "[j]udicial review of whether an arbitration award violates public policy is de novo, but not completely unfettered. The legal determination of whether a particular award violates public policy *necessarily depends on the facts found by the arbitrator* during those proceedings." (Emphasis added.) Id., 94. Thus, we concluded that "the city's public policy claim [was] functionally indistinguishable from its contract illegality defense, and because the city waived its opportunity to present that claim before the panel, the trial court properly determined that the city had waived its public policy claim because there was no factual predicate under which it could be reviewed." Id., 93; see also *Bridgeport* v. *Kasper Group, Inc.*, 278 Conn. 466, 499, 899 A.2d 523 (2006) (*Vertefeuille, J.*, dissenting) (deferring to arbitrator's factual findings in concluding that contract did not violate public policy against illegal procurement and stating that "I would not review the correctness of the finding, implicit in the arbitrator's award, that the contract was not illegally procured"). Thus, we defer to the arbitrator's factual findings, even when the public policy determination for the courts turns on a "subsidiary factual determination" that is "fundamentally indistinguishable" from, or inextricably linked to, a substantive contract defense argued before the arbitrator. *C. R. Klewin Northeast, LLC* v. *Bridgeport*, supra, 96.[11]

We acknowledge that several Appellate Court decisions cited by the parties conclude that, in reviewing a claim that an arbitration award violates public policy,

---

[11] To the extent that the defendant claims that factual determinations by the arbitrators must be reviewed anew by a trial court reviewing a public policy claim, we disagree, because we already have rejected that proposition as an "invitation to turn public policy challenges into the arbitration equivalent of a 'mulligan' by inviting de novo factual review of illegal contract issues." *C.R. Klewin Northeast, LLC* v. *Bridgeport*, supra, 282 Conn. 100.

the trial court should review the arbitrator's findings of fact to determine that they are supported by substantial evidence.[12] See *Enfield* v. *AFSCME, Council 4, Local 1029*, 100 Conn. App. 470, 477, 918 A.2d 934, cert. denied, 282 Conn. 924, 925 A.2d 1105 (2007); *Board of Police Commissioners* v. *Stanley*, 92 Conn. App. 723, 734–36, 887 A.2d 394 (2005); *Metropolitan District Commission* v. *AFSCME, Council 4, Local 184*, 89 Conn. App. 680, 686, 874 A.2d 839, cert. denied, 275 Conn. 912, 882 A.2d 673 (2005). These cases present, however, an incorrect statement of the law in the context of consensual arbitrations, like that in the present case, because they are founded on the Appellate Court's reliance on *Burns* v. *General Motors Corp.*, 80 Conn. App. 146, 151–52, 833 A.2d 934, cert. denied, 267 Conn. 909, 840 A.2d 1170 (2003), which is a lemon law arbitration case. See *Metropolitan District Commission* v. *AFSCME, Council 4, Local 184*, supra, 686. The substantial evidence standard is inapposite in the context of consensual arbitration awards because the use of that standard is statutorily prescribed for lemon law cases by General Statutes (Sup. 2008) § 42-181 (c) (4).[13] See

---

[12] The "substantial evidence standard is highly deferential and permits less judicial scrutiny than a clearly erroneous or weight of the evidence standard of review." (Internal quotation marks omitted.) *Jim's Auto Body* v. *Commissioner of Motor Vehicles*, 285 Conn. 794, 817, 942 A.2d 305 (2008). "[I]n determining whether an [arbitrator's] finding is supported by substantial evidence, a court must defer . . . to the [arbitrator's] right to believe or disbelieve the evidence presented by any witness, even an expert, in whole or in part. . . . This limited standard of review dictates that, [w]ith regard to questions of fact, it is neither the function of the trial court nor of this court to retry the case or to substitute its judgment for that of the [arbitrator]." (Internal quotation marks omitted.) *DaimlerChrysler Corp.* v. *Allard*, 272 Conn. 1, 6, 860 A.2d 1223 (2004); see also, id., 7 ("substantial evidence rule is similar to the sufficiency of the evidence standard applied in judicial review of jury verdicts" [internal quotation marks omitted]).

[13] General Statutes (Sup. 2008) § 42-181 (c) (4) provides in relevant part: "Notwithstanding any provision of the general statutes or any regulation to the contrary, the Department of Consumer Protection shall not amend, reverse, rescind or revoke any decision or action of an arbitrator. . . . In addition, either party to the arbitration may make application to the superior court for the judicial district in which one of the parties resides or, when

*General Motors Corp.* v. *Dohmann,* 247 Conn. 274, 281–82, 722 A.2d 1205 (1998). Indeed, the use of the substantial evidence standard, which "permit[s] judicial review that is broader than that traditionally available for § 52-418 review of voluntary arbitration awards"; *Motor Vehicle Manufacturers Assn. of the United States, Inc.* v. *O'Neill,* 212 Conn. 83, 96, 561 A.2d 917 (1989); for the judicial review of awards that result from arbitration that is statutorily compelled, saves those statutes from constitutional jeopardy under clauses protecting rights to due process and access to the courts. Id., 94; accord *Chmielewski* v. *Aetna Casualty & Surety Co.,* 218 Conn. 646, 660–63, 591 A.2d 101 (1991) (factual determinations in compulsory arbitration in uninsured motorist cases pursuant to General Statutes § 38-175c to be reviewed

---

the court is not in session, any judge thereof for an order confirming, vacating, modifying or correcting any award, in accordance with the provisions of this section and sections 52-417, 52-418, 52-419 and 52-420. Upon filing such application the moving party shall mail a copy of the application to the Attorney General and, upon entry of any judgment or decree, shall mail a copy of such judgment or decree to the Attorney General. A review of such application shall be confined to the record of the proceedings before the arbitrator. The court shall conduct a de novo review of the questions of law raised in the application. In addition to the grounds set forth in sections 52-418 and 52-419, the court shall consider questions of fact raised in the application. *In reviewing questions of fact, the court shall uphold the award unless it determines that the factual findings of the arbitrator are not supported by substantial evidence in the record* and that the substantial rights of the moving party have been prejudiced. If the arbitrator fails to state findings or reasons for the award, or the stated findings or reasons are inadequate, the court shall search the record to determine whether a basis exists to uphold the award. . . ." (Emphasis added.)

This statute was enacted in 1990 in response to this court's decision in *Motor Vehicle Manufacturers Assn. of the United States, Inc.* v. *O'Neill,* 212 Conn. 83, 96–97, 561 A.2d 917 (1989), in which "we concluded that the substantial evidence test that governs judicial review of the factual findings of an administrative agency pursuant to the Uniform Administrative Procedure Act; General Statutes § 4-166 et seq.; did not govern judicial review of the factual findings of [a lemon law] arbitration panel pursuant to General Statutes (Rev. to 1989) § 42-181," which rendered them violations of the constitutional rights to due process and access to the courts. *General Motors Corp.* v. *Dohmann,* supra, 247 Conn. 282 n.6; see *Motor Vehicle Manufacturers Assn. of the United States, Inc.* v. *O'Neill,* supra, 94.

under substantial evidence standard applicable to factual determinations by administrative agencies); see also *O & G/O'Connell Joint Venture* v. *Chase Family Ltd. Partnership No. 3*, 203 Conn. 133, 154–55, 523 A.2d 1271 (1987) (trial court lacked authority to determine that there was insufficient evidence to support arbitrator's award of lost opportunity damages because "judicial review of arbitration awards is even more restrictive than judicial review of a decision of an administrative agency under the Uniform Administrative Procedure Act, which has been interpreted as allowing a court to 'do no more, on the factual questions presented, than to examine the record to determine whether the ultimate findings were supported . . . by substantial evidence' ").[14] Accordingly, we conclude that courts are bound by the arbitrator's factual findings when reviewing a claim that an award violates public policy,[15] even if that claim has been addressed by the arbitrator in the context of a substantive attack on the validity of the contract.[16]

---

[14] We disagree with the defendant's reliance on *Groton* v. *United Steelworkers of America*, supra, 254 Conn. 46–47, for the proposition that public policy issues present mixed questions of law and fact that are subject to plenary review, without deference to the arbitrator's findings. In that case, we concluded that "the public policy against embezzlement encompasses the policy that an employer should not be compelled to reinstate an employee who has been convicted of embezzling the employer's funds, irrespective of whether the conviction followed a trial, a guilty plea or a nolo contendere plea." Id., 48. *Groton* is inapposite because all of the facts of that case, including the meaning of the contract therein, were undisputed, and the public policy issue presented, therefore, a pure question of law. See id., 46. Indeed, we emphasized in *Groton* that, although public policy questions receive de novo review, we nevertheless "give deference to the arbitrator's factual determinations." Id., 52.

[15] The trial court, therefore, did not need to conduct, in effect, appellate review of the arbitrator's factual conclusions in the present case to determine whether they were supported by substantial evidence. This review, while commendably thorough, was unnecessary in the context of this consensual arbitration.

[16] Parties to agreements remain, however, free to contract for expanded judicial review of an arbitrator's findings. See *Stutz* v. *Shepard*, 279 Conn. 115, 124, 901 A.2d 33 (2006) (parties "mutually agreed upon" application of "clearly erroneous" review).

In the present case, it is undisputed that the defendant's claims implicate the clearly established public policy against the enforcement of penalty clauses in contracts. See, e.g., *American Car Rental, Inc.* v. *Commissioner of Consumer Protection*, 273 Conn. 296, 306–307, 869 A.2d 1198 (2005); *Berger* v. *Shanahan*, 142 Conn. 726, 731–32, 118 A.2d 311 (1955). A clause fixing damages for a contractual breach, however, may be a permissible liquidated damages clause, rather than an illegal penalty clause, "if three conditions are satisfied: (1) The damage which was to be expected as a result of a breach of the contract was uncertain in amount or difficult to prove; (2) there was an intent on the part of the parties to liquidate damages in advance; and (3) the amount stipulated was reasonable in the sense that it was not greatly disproportionate to the amount of the damage which, as the parties looked forward, seemed to be the presumable loss which would be sustained by the contractee in the event of a breach of the contract." (Internal quotation marks omitted.) *American Car Rental, Inc.* v. *Commissioner of Consumer Protection*, supra, 307, quoting *Berger* v. *Shanahan*, supra, 731–32. Thus, in fashioning the award, the arbitrator considered the legality of the clause at issue, and ruled directly on the public policy concerns implicated by this case.

Accordingly, we engage in a de novo review of the arbitrator's application of these legal principles to his factual findings. The arbitrator credited the testimony of Paul Dixon, the defendant's negotiator, who, during negotiations, had proposed an initial liquidated damages figure of $1500, then $2500, and then finally increased that number to $5000, but commencing 180 days later than the parties originally had intended. The arbitrator then relied on the testimony of Michael Bradley, the plaintiff's negotiator, who testified that the plaintiff expected to earn $5000 per day from the property, which "is a valid proxy for damage caused by

inability to use the asset acquired . . . ." Finally, the arbitrator concluded that liquidation of damages was appropriate because the party in breach retained the power to stop the damages by remediating the property. The arbitrator emphasized that the $5000 per diem figure was agreed upon by "representatives of two sophisticated businesses . . . ."

Thus, we conclude, on the basis of the facts as found by the arbitrator, that the per· diem clause was a valid liquidated damages provision. In particular, we note that it was actively negotiated by the parties in an attempt to reach an agreement on the sale of the property. See *Hendricks Property Management Corp.* v. *Birchwood Properties Ltd. Partnership,* 741 N.W.2d 461, 470 (N.D. 2007) ("where experienced parties and their attorneys had multiple opportunities to examine the contracts and discuss their terms, including the liquidated damages clauses, we conclude the evidence supports the district court's finding that the liquidated damages clauses were the result of reasonable endeavor by the parties to fix compensation"). We also emphasize that the arbitrator found it to be reasonable in light of the anticipated damages to the plaintiff from its inability to use the property, as well as the anticipated rate of return.[17] Cf. *American Car Rental, Inc.* v. *Commissioner of Consumer Protection,* supra, 273 Conn. 309 (concluding that $150 per occurrence "speeding" fee

[17] In support of its argument that the per diem clause is an illegal penalty clause, the defendant argues that the "self-help" provision of the purchase agreement permits the plaintiff to assume remediation responsibilities, at which point the per diem charges would stop accruing. The defendant does not, however, argue that the total liquidated damages amount itself violates public policy because the plaintiff had a duty, at some point, to mitigate those damages, rather than rely upon the per diem clause as a limitless annuity. Indeed, this decision, although concluding that the per diem clause at issue herein does not by itself violate public policy, should not be read to countenance such a practice, which would constitute an illegal penalty. See *Newington* v. *General Sanitation Service Co.,* 196 Conn. 81, 85, 491 A.2d 363 (1985) (liquidated damages clause in breached municipal sanitation service contract "should not be construed to excuse the plaintiff from a duty to use reasonable care to minimize its damages" in selection of substitute sanitation provider); *Norwalk Door Closer Co.* v. *Eagle Lock & Screw Co.,*

was unreasonable when it "was more than 400 times the potential damage incurred" by rental vehicle, as "the hearing officer calculated the damage incurred by the plaintiff as a result of the operation of a rental vehicle at eighty miles per hour for two minutes at thirty-seven cents"); *Schoonmaker* v. *Cummings & Lockwood of Connecticut, P.C.*, supra, 252 Conn. 435 n.12 (reasonableness of attorney's fees, although implicating public policy set by rule 1.5 of the Rules of Professional Conduct, remains question of fact requiring deference to arbitrator's findings). Thus, we conclude that the trial court properly determined that the arbitrator's enforcement of the per diem clause, which was actively negotiated by two sophisticated commercial parties that had the ample assistance of counsel,[18] does not offend the public policy of our state.

The judgment is affirmed.

In this opinion the other justices concurred.

---

153 Conn. 681, 688–89, 220 A.2d 263 (1966) ("This is not to say that any burden is placed on a plaintiff to prove actual damage in order to recover under a valid contract for liquidated damages. The proposition is only that equitable principles will be invoked to deny recovery when the facts make it apparent that no damage has been suffered."); see also id., 689–90 ("Consequently, if the damage envisioned by the parties never occurs, the whole premise for their agreed estimate vanishes, and, even if the contract was to be construed as one for liquidated damages rather than one for a penalty, neither justice nor the intent of the parties is served by enforcement. To enforce it would amount in reality to the infliction of a penalty.").

[18] The defendant, relying on the testimony of its counsel for the negotiation of the purchase agreement, claims that the per diem clause is an illegal penalty because the parties had characterized it throughout as a " 'hammer' " or "penalty." See, e.g., *American Car Rental, Inc.* v. *Commissioner of Consumer Protection*, supra, 273 Conn. 306 ("[a] contractual provision for a penalty is one the prime purpose of which is to prevent a breach of the contract by holding over the head of a contracting party the threat of punishment for a breach" [internal quotation marks omitted]). It is, however, well settled that whether a clause is a valid liquidated damage provision, rather than an illegal penalty, is a matter of the parties' intent, and that the determination is "not controlled by the fact that the phrase liquidated damages or the word penalty is used." (Internal quotation marks omitted.) Id. Inasmuch as the arbitrator already has made comprehensive findings on this point, we defer to those findings and decline the defendant's invitation to retry these facts.